[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 26, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-13958

_____

D. C. Docket No. 99-02282-CV-AR-S

DANNY MCFARLIN,
NEAL NIELSEN,
ELEANOR D. NEWMAN,
DICK MANLEY,
ROBERT E. TAYLOR, et al.,

Plaintiffs-Appellees,

versus

CONSECO SERVICES, LLC,
CONSECO HEALTH INSURANCE COMPANY,
f.k.a. Capitol American Life Insurance
Company, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(August 26, 2004)

Before DUBINA, CARNES and CUDAHY[*], Circuit Judges.

CARNES, Circuit Judge:

One of the statutory exceptions to the final judgment rule is set out in 28 U.S.C. § 1292(b).  Under that provision, three things must happen in order for a court of appeals to have jurisdiction where it would not otherwise.  A district court must certify in writing that one of its orders "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  A party must, within ten days of the district court's order, apply to the court of appeals for permission to appeal.  And the court of appeals must decide in its discretion to exercise interlocutory review.  All three of those things happened in this case.

A court of appeals' order granting permission for an interlocutory appeal under § 1292(b) is not irrevocable, however.  In our court, at least, the decision to permit an interlocutory appeal under this provision is made by a motions panel.  Like all motions initially ruled upon by a motions panel, it is subject to being vacated as improvidently granted by the merits panel to which the case is assigned for decision.  11th Cir. R. 27-1(g); Burrell v. Bd. of Trustees of Ga. Military

[*] Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

College, 970 F.2d 785, 788-89 (11th Cir. 1992). That is what we are going to do in this case, because it presents a textbook example of when § 1292(b) discretionary jurisdiction should not be exercised.

## I.

In 1999 fifteen plaintiffs filed this lawsuit in federal district court against two sets of defendants: (1) Conseco, Inc., Conseco Health, Conseco Services, Performance Matters Associates (PMA), and Christopher Weaver (the Conseco defendants); and (2) Mike Foster, David King, Consolidated Marketing Group (CMG), and Suncoast Fringe Benefits (the CMG defendants). The plaintiffs were "executive directors" for Capitol American Life Insurance Company at the time it was acquired by Conseco, Inc. in 1997. Their claims arose from Conseco, Inc.'s purchase of Capitol American, and Conseco Health's subsequent consolidation of the plaintiffs into one large marketing organization.

Capitol American sold supplemental health insurance through door-to-door marketing and to employer and payroll groups. It was structured so that executive directors worked as its independent contractors to sell its insurance products. Executive directors were responsible for running individual marketing organizations (IMOs) and recruiting and training independent agents. Each executive director earned a commission on all the products sold by his IMO.

The arrangements between Capitol American and its IMOs were governed by marketing agreements. Between 1986 and 1996 each of the plaintiffs signed a marketing agreement with Capitol American, on behalf of themselves as individuals and/or on behalf of their IMOs. In 1996, plaintiffs McFarlin, Newman, Manley, and Nielsen executed an agreement with Capitol American entitled "business continuation plan." That plan allowed for continuation of an IMO's business even after the termination, retirement, or death of the executive director, and it required compliance with a non-compete agreement with Capitol American.

In 1996, Capitol American announced that it was going to be acquired by Conseco, Inc, a large corporation that owns a number of insurance companies. During the acquisition, defendant Christopher Weaver was an executive at Capitol American. He was responsible for keeping communication open among the management of both companies and Capitol American's executive directors. After the acquisition, Capitol American became known as Conseco Health, and this new entity assumed Capitol American's agreements with the plaintiffs. Weaver became Executive Vice President of Marketing at Conseco Health.

Soon after the acquisition, the Conseco defendants began to restructure Conseco Health's marketing plan. Weaver proposed that most of the smaller IMOs be brought into one large IMO. Conseco Health followed that proposal,

4

consolidating all the former Capitol American IMOs with less than $2 million in annual sales into one marketing organization. Defendant Suncoast Fringe Benefits, a very successful IMO for Capitol American which was owned by defendants Foster and King, was renamed Consolidated Marketing Group (CMG), and between 100 and 200 of the small IMOs were consolidated into it. Foster and King continued to own and operate CMG. Six larger IMOs did remain separate entities under Conseco Health.

After the CMG consolidation, the executive directors received less in commissions. Under the marketing agreements, Conseco Health was allowed to change the plaintiffs' commission structure so long as written notice was provided, and it had been. All of the plaintiffs had been sent a letter on June 9, 1997, stating that the commission structure would be changed in 30 days and that the IMOs were being consolidated. After the consolidation, all the IMOs dealt with CMG rather than directly with Conseco Health.

Weaver stopped working for Conseco Services in June 1998 and started working for TLC National Marketing, Inc, which is one of the six IMOs that had not been consolidated with CMG. In June of 1999 Conseco, Inc. (the parent of the Conseco companies), bought TLC and several other of these IMOs, and combined them under the name Performance Matters Associates, Inc. (PMA). The marketing

5

agreements still remained in effect. CMG was subsumed under PMA, which now performs the same function CMG had been performing. The formation of PMA was announced in a letter to the executive directors of the affected IMOs, including plaintiffs. Changes in commissions and hierarchies were allowed under the marketing agreements.

## II.

The complaint asserted claims for breach of contract, unjust enrichment, tortious interference with contractual and business relations, fraud, RICO violations, and conspiracy against the two sets of defendants we have already described. The plaintiffs voluntarily dismissed their claims against Conseco, Inc. The Conseco defendants and the CMG defendants then filed separate motions for summary judgment.

On May 27, 2003, the district court granted the Conseco defendants' motion for summary judgment as to the tortious interference claim against Conseco Health, and as to the breach of contract claims against all defendants other than Conseco Health. It denied the Conseco defendants' motion for summary judgment as to all the other claims against them. The court also denied the CMG defendants' motion for summary judgment in its entirety.

On June 19, 2003, the district court on its own motion entered an order certifying its May 27, 2003 order for appeal pursuant to 28 U.S.C. § 1292(b). In doing so, the court failed to specify what it thought the controlling question of law that qualified for interlocutory appeal was. Both sets of defendants filed with us petitions for permission to appeal under § 1292(b), which did specify controlling questions. Each petition was presented to a different motions panel of this Court, and each panel entered an order granting the petition before it. The plaintiffs filed a motion to vacate the orders permitting the appeal, and that motion has been carried with the case.

## III.

Section 1292(b) says this:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292(b). As that language indicates, whether to permit this appeal to go forward is not a question of jurisdiction or power. In its order denying the motions for summary judgment the district court certified the matter as required for

7

§ 1292(b) treatment, and within ten days the defendants filed applications with this Court for permission to appeal. That is enough to give us discretion to exercise appellate jurisdiction now instead of waiting until after final judgment.

The district court's failure to specify the controlling question or questions of law it had in mind when certifying that the case meets the requirements of § 1292(b) is a factor we may consider in deciding how to exercise our discretionary power to review. It does not, however, remove our power of review. Under the statute, "appellate jurisdiction applies to the order certified to the court of appeals, and is not tied to the particular question formulated by the district court." Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 205, 116 S. Ct. 619, 623 (1996). As a result, "the scope of appellate review is not limited to the precise question certified by the district court because the district court's order, not the certified question, is brought before the court." Aldridge v. Lily-Tulip, Inc. Salary Retirement Plan Benefits Committee, 40 F.3d 1202, 1207 (11th Cir. 1994) (per curiam). In fact, we have the power to "review an entire order, either to consider a question different from the one certified as controlling or to decide the case despite the lack of any identified controlling question." Yamaha Motor, 516 U.S. at 205, 116 S. Ct. at 623.

Power is one thing, the prudent exercise of it is another. This Court has decided a large number of interlocutory appeals under § 1292(b) over the years, and has declined to decide a large number as well. We have not, however, previously set out any general principles about when we should exercise our discretionary authority under this important statute. Realizing that we cannot constrain the power of other panels to exercise their § 1292(b) discretion as they see fit in the cases that come before them, we still think it might be helpful to offer our views on the subject. Besides, the parties in this case, and particularly the defendants whose efforts to get the denial of their motions for summary judgment relief reviewed are being rejected, may appreciate an explanation.

To understand the applicable standards for § 1292(b) appeals, we will look to the text of § 1292(b) in light of its treatment in the case law of this circuit and others. Before doing so, it is helpful to understand how that statutory provision came about.

**A.**

Paragraph (b) was added to § 1292 on September 2, 1958, H.R. 6238, Pub. L. No. 85-919, 72 Stat. 1770. It has been amended in minor ways since then, but the core requirement that the order to be appealed "involve[] a controlling question of law as to which there is substantial ground for difference of opinion," and that

an immediate appeal "may materially advance the ultimate termination of the litigation" has remained unchanged.

The addition of § 1292(b) was prompted by a proposal to Congress from the Judicial Conference of the United States Courts. 1958 U.S.C.C.A.N. 5258. The specifics of that proposal originated from a committee of judges appointed by the Chief Justice to study the matter of interlocutory appeals. Id. The committee's report was approved by the Judicial Conference and transmitted to Congress, where it was reproduced in the reports of the House and Senate Judiciary Committees when they acted favorably on the legislation. Id. at 5255. The report of the Judicial Conference committee is particularly persuasive in regard to the intent behind the provision, because Congress enacted the report's proposed language verbatim. The report contained this important passage emphasizing the limited scope of the proposal:

> [T]he appeal from interlocutory orders thus provided should and will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided, as in the recent case of Austrian v. Williams, [198 F.2d 697 (2d Cir. 1952).] It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question as to the correctness of the ruling would prompt the granting of the certificate. The right of appeal given by the amendatory statute is limited both by the requirement of the certificate of the trial judge, who is familiar with the litigation and will not be disposed to countenance dilatory tactics, and by the

10

resting of final discretion in the matter in the court of appeals, which will not permit its docket to be crowded with piecemeal or minor litigation.

Id. at 5260-61.[1]  See also id. at 5259 ("[T]oo great freedom in taking appeals from orders of the district court prior to the final judgment, 'piecemeal appeals' as they are called, may make for delay and increase the expense of the litigation.").

The Senate Judiciary Committee Report, S. Rep. No. 2424 (1958), offers this insight into the type of situation Congress intended § 1292(b) to address:

> [I]n a recent case, a motion to dismiss for want of jurisdiction was filed in the district court early in the proceedings.  The district court denied the motion and the matter then proceeded to trial.  The disposition of that case took almost 8 months.  Upon final order the case was appealed and the court of appeals determined that the district court did not have jurisdiction and entered an order accordingly.  Had this legislation been in effect at that time, the district judge could have stated in writing his opinion that the motion was controlling and the defendant could thereupon have made application to the court of appeals for a review of the order denying the motion.  Had the court of appeals entertained such a motion and reached the conclusion which it ultimately did, it would have resulted in a saving of the time of the district court and considerable expense on the part of the litigants.

---

[1] In Austrian v. Williams, the case cited in the committee's report, a corporation's trustees sued its directors, officers, and principal stockholder in federal court for breach of their fiduciary duties to the corporation.  198 F.2d at 699.  Defendants raised a state law statute of limitations defense.  Id.  Instead of applying that statute of limitations as it would have been applied in state court, the district court read into it a federal equitable rule that tolled the running during the period in which the wrongdoers controlled the corporation.  On that basis, the district court held that the claim was not barred.  Id. at 700.  The trial resulted in judgment against two of the defendants, who appealed.  Id. at 699.  The Second Circuit reversed, holding that a federal court must apply a state statute of limitations in accordance with state law, and doing that meant the plaintiffs' claims were barred.  Id. at 700-01.  If an appeal under § 1292(b) had been available, the statute of limitations question could have been resolved earlier, preventing the necessity of a trial.

1958 U.S.C.C.A.N. 5256. The same report gives as another example of when an interlocutory appeal might be appropriate the denial of a motion to dismiss an antitrust action on statute of limitations grounds. It might be good to let that question be reviewed before final judgment, the report explains, because "[d]isposition of antitrust cases may take considerable time, yet upon appeal . . . the court of appeals may well determine that the statute of limitations had run and for that reason the district court did not have jurisdiction." Id. at 5256. Those two examples have in common that they involve potentially dispositive legal questions collateral to the merits that might render unnecessary a lengthy trial. That is largely true as well of the only other example given in the Senate report, which is the ruling upon a motion to join a third party defendant. Id.

**B.**

The essential requirements for any § 1292(b) appeal, which are set out in the statute itself, present us with three questions: (1) What is a "controlling question of law?"; (2) what is a "substantial ground for difference of opinion?"; and (3) what does it mean for an appeal to "materially advance the ultimate termination of the litigation?" To answer these inquiries, we look to the case law of this and other circuits, in light of what we have already learned from the legislative history.

1.

12

We begin with the requirement that "a controlling question of law" be at issue. The old Fifth Circuit has recognized a distinction between a question of law, which will satisfy § 1292(b), and "a question of fact or matter for the discretion of the trial court." Garner v. Wolfinbarger, 430 F.2d 1093, 1096-97 (5th Cir. 1970);[1] see also Clark-Dietz & Assoc.-Eng'rs. v. Basic Constr. Co., 702 F.2d 67, 69 (5th Cir. 1983) (denying § 1292(b) petition where questions "appear to be merely fact-review questions"). This distinction between legal and factual inquiries arises frequently in attempts to appeal interlocutorily the denial of summary judgment. See Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 631 (2d Cir. 1991) ("Where, as here, the controlling issues are questions of fact, or, more precisely, questions as to whether genuine issues of material fact remain to be tried, the federal scheme does not provide for an immediate appeal . . . ."); Chappell & Co. v. Frankel, 367 F.2d 197, 200 n.4 (2d Cir. 1966) (en banc) ("It is doubtful whether the denial of summary judgment when the applicable law is clear but there is a genuine issue as to a material fact can properly be certified under section 1292(b) . . . .").

---

[1] Fifth Circuit decisions rendered prior to the close of business on September 30, 1981 are binding precedent on this Court. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

13

In Ahrenholz v. Board of Trustees of the University of Illinois, 219 F.3d 674 (7th Cir. 2000), the Seventh Circuit focused in some detail on the type of questions appropriate for § 1292(b) appeal. It concluded that "'question of law' as used in § 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact." Id. at 676. The term "question of law" does not mean the application of settled law to fact. Id. It does not mean any question the decision of which requires rooting through the record in search of the facts or of genuine issues of fact. See id. Instead, what the framers of § 1292(b) had in mind is more of an abstract legal issue or what might be called one of "pure" law, matters the court of appeals "can decide quickly and cleanly without having to study the record." Id. at 677.

Consider, for example, Amos v. Glynn County Board of Tax Assessors, 347 F.3d 1249, 1254 (11th Cir. 2003), and the unpublished order previously issued in that case which the opinion describes. In that order we had denied a county's § 1292(b) petition to appeal from the district court's denial of a motion to dismiss a constitutional challenge to the property tax assessment measures used by that county. Id. at 1254. We explained that we had denied the petition because the determination of whether the legal process of the state was "plain, speedy, and

14

efficient," which could determine the district court's jurisdiction and dispose of the case, was too fact-intensive an inquiry for interlocutory review. Id. at 1254.

2.

As for the "substantial ground for difference of opinion" requirement, we have held that a question of law as to which we are in "complete and unequivocal" agreement with the district court is not a proper one for § 1292(b) review. Burrell, 970 F.2d at 788-89. Although we thought that the question in that appeal met the controlling question of law requirement, we thought the resolution of it so clear that the "substantial ground for difference of opinion" requirement could not be met. 970 F.2d at 788-89.

3.

Finally, the text of § 1292(b) requires that resolution of a "controlling question of law . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation. See generally 16 Charles Alan Wright, et al., Federal Practice & Procedure §3930 at 432 (2d ed. 1996); see also In re Virginia Elec. & Power Co., 539 F.2d 357, 364 (4th Cir. 1976) (§ 1292(b) appeal appropriate where resolution of controlling question could prevent

15

substantial delay); U.S. Fidelity & Guar. Co. v. Thomas Solvent Co., 683 F. Supp. 1139, 1176 (W.D. Mich. 1988) (§ 1292(b) appeal appropriate where resolution of controlling questions could shorten the time, effort, and expense of the litigation); Ashmore v. Northeast Petrol Div., 855 F. Supp. 438, 440 (D. Me. 1994) (§ 1292(b) appeal inappropriate where the same parties and issues would remain in district court regardless of resolution of issues on appeal).

## C.

To summarize, § 1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts. See, e.g., Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1252-53 (11th Cir. 2003) (granting § 1292(b) review of whether district court has jurisdiction over class members who do not satisfy the amount in controversy requirement, and whether following a jury verdict in favor of the class the district court should have awarded aggregate damages to the class); Tucker v. Fearn, 333 F.3d 1216, 1218 (11th Cir. 2003) (granting § 1292(b) review of whether a nondependent parent may recover loss of society damages for the wrongful death of his minor child under general maritime law); Love v. Delta Air Lines, 310 F.3d 1347, 1351 (11th Cir. 2002) (granting § 1292(b) review of whether the Air Carrier

16

Access Act of 1986 implies a private right of action, and if so what remedies are available to private litigants). The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case. In determining whether to grant review, we should ask if there is substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed. The legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law. And the answer to that question must substantially reduce the amount of litigation left in the case.

Even when all of those factors are present, the court of appeals has discretion to turn down a § 1292(b) appeal. And we will sometimes do so. The proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule, and are threatened by too expansive use of the § 1292(b) exception to it. Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy. With these thoughts in mind, we examine the

questions which the defendants in this case set forth in their petitions as "controlling questions of law."

## IV.

## A.

The first proposed question of law that the CMG defendants set out in their petition for review is: "Whether the district court erred in denying [the CMG defendants'] Motion for Summary Judgment by ignoring unambiguous contractual provisions governing the relationship of the parties, contrary to controlling Alabama law?"

This issue stems from the district court's denial of the CMG defendants' motions for summary judgment on the plaintiffs' claims for breach of contract, both as to the marketing agreements and the business continuation plans. As to the marketing agreements, the district court concluded that genuine issues of material fact precluded summary judgment as to whether breaches had occurred. As to the business continuation plans, it concluded that plaintiffs had "presented sufficient evidence to create a jury question . . . for breach of the business continuation plan." The district court noted that the plaintiffs "maintain that Conseco Health has breached the express terms of the business continuation plan by removing groups 'tied' to their IMOs in breach of the 'good faith' provision."

18

The CMG defendants argue that the district court's denial of summary judgment on the breach claims implicitly contains a holding that the plaintiffs have some sort of "legal interest" in their policyholders. They assert that an agent can acquire a legal interest in its policyholders only by an explicit contractual grant. Joe Cooper & Assoc., Inc. v. Central Life Assurance Co., 614 So. 2d 982, 988 (Ala. 1992). But, say the CMG defendants, neither the marketing agreements nor the business continuation plans contained such an explicit grant.

Plaintiffs do not dispute the rules of law the CMG defendants rely upon. Instead, they maintain that they are not claiming a right to a "legal interest" in policyholders or anyone else. They alleged in their complaint that the defendants breached the express and implied provisions of the marketing agreement with plaintiffs, and the business continuation plan, including the express good faith requirement.

The plaintiffs are correct in their characterization of the issues. The district court's denial of summary judgment on the breach claims was not based upon whether plaintiffs had a "legal interest" in their policyholders. Instead, the court held that genuine issues of fact remained as to the plaintiffs' theory that defendants had breached the marketing agreements and the plans. Defendants' summary judgment motions do not turn on whether the plaintiffs have a "legal

19

interest" in their policyholders, which is the question the CMG defendants presented as "a controlling question of law as to which there is substantial ground for difference of opinion."

The district court's ruling on the breach of contract claims came down to an application of the facts to the terms of the contract. There is no real disagreement about a pure law premise here. The statement of law defendants assert as the correct interpretation of the controlling question is not inconsistent with the district court's reasoning. It follows that this is not a "controlling question of law as to which there is substantial ground for difference of opinion," and therefore not a proper basis on which to permit a § 1292(b) appeal.

**B.**

The second question the CMG defendants suggested in their petition for review is: "Whether the district court erred in denying [the CMG defendants] Motion for Summary Judgment [on the tortious interference claim] by finding that Foster and King were 'strangers' to the relationship between [the plaintiffs] and their groups, contrary to controlling Alabama law?"

To establish a claim for tortious interference with contractual or business relations, a plaintiff must prove: "1) the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3)

intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 5) damage to the plaintiff as a result of the interference." Ex parte Awtrey Realty Co., 827 So. 2d 104, 108-09 (Ala. 2001).

In addition to those five factors, "the fact that a defendant is not a party to the relationship is an element of the plaintiff's tortious-interference claim." BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So. 2d 203, 212 (Ala. 2001). Therefore, "[a]fter proving the existence of a contract, it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered." Id.

The district court did conclude that Conseco Health was not a stranger to the business relationships plaintiffs had with their agents and customers, and granted Conseco Health summary judgment on the tortious interference claims. The district court held, however, that Weaver, Conseco Services, Foster, King, CMG, and SunCoast were all strangers to plaintiffs' business relations, and for that reason denied them summary judgment. The CMG defendants argue to us that Foster and King – who owned and operated Capitol American's very successful IMO Suncoast Fringe Benefits, and continued to operate it when it became CMG and the

21

smaller IMOs were consolidated under it – were parties to the plaintiffs' business relationships, not strangers, and thus that the district court erred in failing to grant them summary judgment.

In ruling on the tortious interference claim, the district court recounted the law about when a party is a "stranger" to a contract. The district court then went on to find that the defendants other than Conseco Health – whose contracts with plaintiffs actually gave rise to plaintiffs' contracts and business relations with their agents and customers – were not parties to the plaintiffs' business relationships simply because they themselves have contractual or business relations with Conseco Health.

The CMG defendants argue that the question of who is a "stranger" for tortious interference purposes is a "controlling question of law as to which there is substantial ground for difference of opinion." They argue that the district court erred in its application of the law because of the doctrine of tripartite relationships. See Colonial Bank v. Patterson, 788 So. 2d 134, 138 (Ala. 2000) ("[W]hen tripartite relationships exist and disputes arise between two of the three parties, then a claim alleging interference by the third party that arises from conduct by the third party that is appropriate under its contract with the other two parties is not recognized."). The CMG defendants contend that this case is on all fours with

22

Williams v. A.L. Williams & Associates, Inc., 555 So. 2d 121 (Ala. 1989), and that the district court's failure to follow that decision makes its denial of summary judgment an error of pure law.

We disagree. The issue of whether Foster and King were strangers to the business relationship between plaintiffs and their agents and customers is a fact-intensive one. The district court did not misstate the law governing when someone is a stranger to a business relationship. The CMG defendants simply assert that under all of the facts, the district court should have decided that Foster and King were parties to the business relationship. There is no disagreement about what the law is regarding when a tortious interference claim will lie. There is only an issue of applying the law to this particular factual scenario. That is not enough to upset the usual course of proceedings and permit an interlocutory appeal.

Alternatively, resolution of this question would not "materially advance the ultimate termination of the litigation," as required by the statute. The "stranger" question relates only to the tortious interference claim, and answering it now would not get rid of any of the other claims. Resolution of one claim out of seven would do too little, if anything, to "materially advance the ultimate termination of the litigation." That might not be true of one claim of several in another case, but it is true of this claim here.

23

## C.

The third controlling question of law the CMG defendants propose in their petition for review is: "Whether the district court erred in denying [the CMG defendants'] motion for summary judgment by finding a cause of action under RICO where there are no specific allegations of mail and wire fraud against Foster and King, thus turning a garden variety business dispute into a RICO action."

The defendants argued to the district court that plaintiffs' RICO claims were not pled with sufficient particularity. The district court disagreed, however, and found that the plaintiffs had presented sufficient evidence to create a genuine issue of material fact as to their fraud claims, and had presented evidence that the defendants used the mail, faxes, and telephones to communicate the misrepresentations to plaintiffs. It denied the motion for summary judgment on the RICO claims.

In their brief to us, the CMG defendants renew their argument that plaintiffs failed to plead their RICO claims with sufficient particularity, as required by Fed. R. Civ. P. 9(b). That is a classic example of a question arising from the application of well-accepted law to the particular facts of a pleading in a specific case. Likewise, their contention that the district court erred in denying their motion for summary judgment on the grounds that the evidence raised a genuine issue of

24

material fact presents a run-of-the-mine question requiring us to dig deep into the record of this case. No pure or abstract legal question of any significant import beyond this case is at stake. These defendants simply want us to review the district court's take on the facts that reasonably could be inferred from the evidence. That is not the purpose of § 1292(b) appeals. Besides, an interlocutory appellate decision about this claim would not "materially advance the ultimate termination of the litigation." It might dispose of the RICO claim, but it would leave the others standing.

### D.

At oral argument, the CMG defendants asserted that another controlling question of law is whether the district court erred in holding, with respect to plaintiffs' fraud claims, that plaintiffs reasonably relied on defendants' misrepresentations in light of the course of dealings between the parties.

A party is not allowed to raise at oral argument a new issue for review. Flanigan's Enterprises, Inc. v. Fulton County, 242 F.3d 976, 987 n.16 (11th Cir.2001) (party waives issue not developed in its briefs) (citing Continental Tech. Servs., Inc., v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir.1991) (same)); Chapman v. AI Transport, 229 F.3d 1012, 1044 (11th Cir. 2000) (issue not raised on appeal is waived); Campaign for a Prosperous Georgia v. SEC, 149 F.3d 1282,

25

1287 (11th Cir.1998) (issue not raised on appeal is abandoned). By failing to propose this issue as a controlling question of law in their petition for permission to appeal or their brief, the defendants have waived it.

Additionally, even if this issue had been raised in the defendants' petition, it does not involve "a controlling question of law as to which there is substantial ground for difference of opinion." The CMG defendants' argument is that under Alabama law the reliance element of a fraud claim may not be established with parol evidence unless the court finds that there is ambiguity in the language of the contract. For this proposition, they cite Gardner v. State Farm Mutual Auto Insurance Company, 822 So.2d 1201, 1207 (Ala. Civ. App. 2001) ("When a written agreement is determined to be clear and unambiguous, parol evidence is not admissible to vary the terms of the agreement."). And the district court, according to defendants, did not state in its opinion that it found the contract to be ambiguous.

Even if defendants were correct that a district court is required to find ambiguity in a contract before considering parol evidence of reliance, there is no indication in Gardner or any other authority cited by the defendants that the required finding must be stated by the district court. Because they have presented no authority in support of this premise, which is necessary to their position on the

question they proffer as controlling, the defendants have failed to carry their burden of establishing that as to this question "there is substantial ground for difference of opinion." See Burrell, 970 F.2d at 788-89.

**E.**

The one question put forward by the Conseco defendants in their petition for review is: "Where the district court did not identify a breach of a specific term contained in the Marketing Agreements between [plaintiffs and defendants], can there be a contractual cause of action for breach of the implied duty of good faith and fair dealing under Alabama law?"

The Conseco defendants contend that the district court, in finding that plaintiffs had presented enough evidence to create a genuine issue of material fact as to their breach of contract claims, necessarily held that a claim for breach of the implied duty of good faith and fair dealing can lie even in the absence of a valid claim for explicit breach of a term of the contract. This, according to defendants, is directly contrary to Alabama and Ohio law.[2]

Whether a claim for breach of the implied duty of good faith and fair dealing can lie in the absence of a valid breach of contract claim is a pure question of law.

_____

[2] It is unclear whether the district court applied Alabama or Ohio law. The parties argue points of both Alabama law and Ohio law to us. Because we find no controlling questions of law regardless of whether Alabama or Ohio law applies, we need not decide which state's law governs.

However, we cannot tell from the district court's opinion whether, in fact, it held that the plaintiffs had stated a claim for breach of the implied duty of good faith and fair dealing, despite failing to state a claim for breach of an explicit provision of the contract. For four pages of its opinion, the district court talked about the breach of the executive marketing agreements. It first discussed the explicit breaches plaintiffs alleged, and then the plaintiffs' argument that defendants had also breached the implied duty of good faith. The district court clearly held that a particular plaintiff – Stiffler – had set forth evidence indicating a genuine issue of material fact regarding his claim of an explicit breach of the marketing agreement. Finally, in a passage the precise meaning of which is unclear, the district court stated: "The court agrees with the plaintiffs' position, and finds accordingly, that there is a genuine issue of material fact precluding summary judgment on their claims for breach of the executive marketing agreement."

We cannot tell from the district court's opinion whether it agreed with plaintiffs' position that a breach of the duty of good faith and fair dealing alone is enough, or instead concluded that there had also been a separate breach of the contract. We cannot find any help in the language of the district court's order certifying the case for § 1292(b) review, because it failed to specify the issue the court thought to involve a controlling question of law about which there is

28

substantial ground for difference of opinion. Review under § 1292(b) does not exist for the purpose of resolving ambiguities in district court rulings. The burden of persuading us that a question of law meeting the requirements of § 1292(b) clearly is presented is on the petitioning party, and the Conseco defendants have not carried that burden.

Our decision not to read a controlling question of law into an ambiguous district court opinion for § 1292(b) purposes illuminates an important point. When a district court certifies an order for appeal, it should specify the controlling question of law it has in mind. That is particularly true where the order being certified for review resolves numerous issues; this one involved seven different types of claims by multiple plaintiffs against two sets of defendants. Although, as we noted earlier in this opinion, the failure of a district court to specify a question is not fatal, see Yamaha Motor, 516 U.S. at 205, 116 S. Ct. at 623, we have also noted that our review is discretionary. Given our caseload, when the district court hands us an entire case to sort through for ourselves we are likely to hand it right back. If the district court is unsure about which of the questions, if any, that are answered by its order qualify for certification under § 1292(b), it should not certify the order for review. If convinced that a particular question does qualify, the district court should tell us which question it is.

29

## V.

In conclusion, while we recognize that there are exceptions to almost every rule, we believe that as a rule an appellate court ought to grant permission for appeal under § 1292(b) only on (1) pure questions of law (2) which are controlling of at least a substantial part of the case, (3) and which are specified by the district court in its order, (4) and about which there are substantial grounds for difference of opinion, (5) and whose resolution may well substantially reduce the amount of litigation necessary on remand. Even in those circumstances whether to grant permission for an interlocutory appeal lies in the discretion of the appellate court, which in exercising its discretion should keep in mind that the great bulk of its review must be conducted after final judgment, with § 1292(b) interlocutory review being a rare exception.

This Court's previous orders granting permission to appeal in this case are VACATED, and the petitions for permission to appeal are DENIED.