[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 16-15541; 17-10545; 16-90014
_____

D.C. Docket No. 3:12-cv-00009-MCR-CJK


KIMBERLY A. NICE,
a personal representative of the estate of Shawn R. Nice
1st Lt USMC deceased,
H.N.,
a minor child,

Plaintiffs-Appellees,

versus

L-3 COMMUNICATIONS VERTEX AEROSPACE LLC,
ESTATE OF CHARLES HAROLD MCDANIEL,

Defendants-Appellants.
_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(March 22, 2018)

Before ED CARNES, Chief Judge, DUBINA, Circuit Judge, and ABRAMS,[*] District Judge.

PER CURIAM:

Kimberly Nice filed this wrongful death action against L-3 Communications Vertex Aerospace and the Estate of Charles McDaniel after a Navy aircraft crashed during a training exercise, killing her husband and everyone else on board. The defendants filed a motion to dismiss for lack of subject matter jurisdiction on political question grounds, which the district court denied. The defendants appeal that order, contending that interlocutory review is proper under the collateral order doctrine and, alternatively, that it is appropriate under 28 U.S.C. § 1292(b).

## I.    FACTS AND PROCEDURAL HISTORY

First Lieutenant Shawn Nice was training as a navigator on a Navy-owned jet aircraft during a training exercise when the aircraft crashed in north Georgia. Charles McDaniel, a Navy-approved pilot and Vertex employee, was piloting the aircraft when it crashed. An investigation showed that the aircraft was travelling at a speed of 330 knots when a malfunction caused an inadvertent left rudder movement, which McDaniel countered by moving the rudder to the right. McDaniel's attempt to compensate for the malfunction at that speed broke the tail apart, causing the crash.

---

[*] Honorable Leslie J. Abrams, United States District Judge for the Middle District of Georgia, sitting by designation.

Nice's wife filed this wrongful death action against Vertex and McDaniel's estate. She claimed that McDaniel's negligent response to the malfunction caused the tail to fail and the aircraft to crash. The defendants raised the affirmative defense of comparative fault by the Navy, arguing that the Navy's choice of the aircraft, selection of the mission speed and altitude, and oversights in the training manual contributed in whole or in part to the crash.[1] The defendants filed a motion to dismiss for lack of subject matter jurisdiction on the ground that their comparative fault defense would require the jury to evaluate sensitive Navy decisions, making the case nonjusticiable under the political question doctrine.

The district court denied the motion, finding that the negligence claim hinged on McDaniel's reaction to the malfunction, which had nothing to do with the Navy's decisions. The defendants appealed that order, asserting appellate jurisdiction as of right under the collateral order doctrine. The defendants also filed a petition for permission to appeal under 28 U.S.C. § 1292(b), which permits discretionary interlocutory appeals, and a motions panel of this Court granted that petition.[2]

---

[1] The district court determined that Florida law governed Nice's negligence claim, and that Florida's comparative fault doctrine would allow the defendants to attempt to shift some or all of the fault to the Navy. See Fla. Stat. § 768.81(3)(a).

[2] The district court found that its order involved a "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." See 28 U.S.C. § 1292(b). The motions panel granted permission for the appeal to proceed under § 1292(b), but

3

## II.    DISCUSSION

We have jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. A decision "is considered final and appealable only if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," W.R. Huff Asset Mgmt. Co. v. Kohlberg, Kravis, Roberts & Co., L.P., 566 F.3d 979, 984 (11th Cir. 2009), so denials of a motion to dismiss are normally not considered final under § 1291, see Foy v. Schantz, Schatzman & Aaronson, P.A., 108 F.3d 1347, 1350 (11th Cir. 1997).

This appeal presents two jurisdictional issues: (1) whether the district court's order is appealable as of right under the collateral order doctrine, which is an exception to the final judgment rule, and (2) whether we should exercise our discretion to permit the defendants' appeal under § 1292(b).

### A.    Collateral Order Issue

The collateral order doctrine recognizes "a small category of decisions that, although they do not end the litigation, must nonetheless be considered final." In re Hubbard, 803 F.3d 1298, 1305 (11th Cir. 2015) (quotation marks omitted). That small category "includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal

---

we may conclude that the "motion for leave to appeal was improvidently granted and vacate the order." Burrell v. Bd. of Trustees of Ga. Military College, 970 F.2d 785, 788 (11th Cir. 1992).

from the final judgment in the underlying action." Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106, 130 S. Ct. 599, 605 (2009).  Nice does not contest the first two requirements.  As for the third requirement, the defendants argue that without an immediate appeal their comparative fault defense will require the jury to second-guess sensitive Navy decisions, which harms the public's interest in separation of powers, and a later appeal will not undo that damage.  That argument fails.[3]

Courts cannot engage in an "individualized jurisdictional inquiry" to determine whether a decision fits into the small category of collateral order decisions. Id. at 107, 130 S. Ct. at 605 (quotation marks omitted).[4]  That is exactly what the defendants want us to do here.  Their argument that an immediate appeal is necessary to stop a jury from second-guessing the Navy's decisions turns on the Navy's choice of the aircraft, selection of the mission speed and altitude, and

---

[3] Although it does not impact our decision, we note that the Navy is aware of this case (it has responded to discovery requests and was ordered to appear in a telephonic discovery hearing) but has not filed a statement of interest or amicus brief.  See 28 U.S.C. § 517 ("The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.").

[4] We have not decided whether the denial of a motion to dismiss on political question grounds fits into that small category, McMahon v. Presidential Airways, Inc., 502 F.3d 1331, 1357 (11th Cir. 2007), but two of our sister circuits have addressed the issue and have held that the "denial of a motion to dismiss based upon political question grounds is not an immediately appealable collateral order." Doe v. Exxon Mobil Corp., 473 F.3d 345, 353 (D.C. Cir. 2007); see also Abelesz v. OTP Bank, 692 F.3d 638, 650 (7th Cir. 2012) (same).

5

instructions in the training manual, all of which are facts peculiar to this case.

Instead of delving into those facts, we must focus on whether the "class of claims,

taken as a whole, can be adequately vindicated" by means other than an immediate

appeal. Id.[5] The defendants can raise their subject matter jurisdiction argument

after final judgment,[6] and their argument that the court's order may be burdensome

in "ways that are only imperfectly reparable by appellate reversal of a final district

court judgment . . . has never sufficed" to satisfy the third condition. Id. (quotation

marks omitted); see also Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S.

863, 873, 114 S. Ct. 1992, 1998–99 (1994) (stating that "virtually every right that

could be enforced appropriately by pretrial dismissal might loosely be described as

conferring a right not to stand trial," which means that courts of appeals must

"view claims of a right not to be tried with skepticism, if not a jaundiced eye")

(quotation marks omitted). For those reasons, the district court's order is not

"final" under the collateral order doctrine.

---

[5] The defendants attempt to shoehorn this case into the collateral order doctrine by asserting that the relevant category of cases are those where an "issue exists regarding the military's negligence and the governing allocation of fault law allows the jury to allocate a percentage of fault to the military on the verdict form." That attempt fails because defining the "class of claims" at such a narrow level amounts to an "individualized jurisdictional inquiry" largely based on the facts of the case, which is prohibited. Mohawk, 558 U.S. at 107, 130 S. Ct. at 605 (quotation marks omitted).

[6] See Kontrick v. Ryan, 540 U.S. 443, 455, 124 S. Ct. 906, 915 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance.").

B.    Jurisdiction Under Section 1292(b)

That leaves the issue of whether we should permit this appeal under

§ 1292(b), which grants us discretionary jurisdiction to exercise interlocutory

review.  See 28 U.S.C. § 1292(b); McFarlin v. Conseco Servs., LLC, 381 F.3d

1251, 1253 (11th Cir. 2004).  "We have identified five conditions that generally

must be met before we will consider an issue on interlocutory appeal under

§ 1292(b)."  Mamani v. Berzain, 825 F.3d 1304, 1312 (11th Cir. 2016).  One of

those is that the "issue is a pure question of law," id., and the defendants falter at

that first hurtle.  They argue that the condition is satisfied because we need to

decide only whether their comparative fault defense divests the district court of

subject matter jurisdiction under the political question doctrine.  They assert that

the facts underlying that issue are undisputed and sit "neatly and clearly atop the

record."

The issue is neither neat nor clear from any vantage point in the record.  And

it is far from being one of pure law.  The basic historical facts underlying this case

may be undisputed — the what, when, and where of the crash.  The question of

who caused the crash, however, is hotly disputed, as the defendants conceded at

oral argument.  O.A. Trans., Oct. 27, 2017.[7]  And determining whether the

---

[7] For instance, the defendants assert that the district court's finding that the Navy was not responsible for McDaniel's training is clearly erroneous.

7

defendants' comparative fault defense would force the jury to evaluate sensitive Navy decisions requires us to answer the disputed question of who caused the crash:  the Navy, the defendants, or both.  That case-specific inquiry does not present a pure question of law but a mixed one of law and fact.  It would require us to decide whether "the district court properly applied settled [political question doctrine principles] to the facts or evidence of [this] particular case."  Mamani, 825 F.3d at 1312 (quotation marks omitted).  As a result, the first requirement for exercising jurisdiction under § 1292(b) is not satisfied.[8]

The appeals are **DISMISSED**, the order granting permission to appeal under § 1292(b) is **VACATED**, the petition for permission to appeal under that statute is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this opinion.

---

[8] Even if the defendants could satisfy the first condition, we would exercise our discretion not to review this appeal.  See McFarlin, 381 F.3d at 1259 ("Even when all of [the] factors are present, the court of appeals has discretion to turn down a § 1292(b) appeal.").