# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1848

_____

Chris Collins, as Next Friend of: J.Y.C.C.; I.K.C.C.; E.A.C.C.; E.L.C.C.;
A.R.C.C.; J.R.G.; F.R.A.; R.F.R.C.; S.S.L.; R.D.L.C.; G.N.A.A.; H.G.A.L.;
A.X.E.A.; M.Z.A.B.; A.Y.A.G.; I.D.A.A.; J.D.A.E.; Y.D.T.; E.J.D.L.C.D.;
N.G.C.V.; Y.G.C.F.; C.P.C.F.; Y.Y.C.G.; K.A.C.G.; C.F.C.P.; J.A.C.A.; C.L.B.F.;
J.C.Z.P.; F.A.Z.P.; S.L.W.B.; L.R.V.P.; J.N.V.P.; J.E.V.P.; R.W.U.T.; A.S.T.C.;
M.A.S.S.; C.L.S.S.; J.Y.S.O.; K.LR.O.; A.S.R.A.; A.A.R.A.; L.A.R.A.; R.M.R.C.;
D.R.Q.L.; Y.Q.L.; J.A.Q.A.; N.Y.P.A.; L.Y.P.A.; D.Y.P.A.; V.O.M.; K.M.P.;
E.M.P.; A.M.P.; M.M.F.; B.L.L.A.; A.L.S.; J.H.L.A.; Y.M.J.C.; Y.S.J.C.;
A.B.E.I.F.; B.Y.I.R.; M.I.J.; X.N.G.G.; Z.Y.F.M.; Y.S.E.A.; J.J.E.A.; R.G.E.A.;
Y.B.E.B.; C.E.Y.; J.A.E.S.; M.E.A.B.; A.H.A.B.; E.S.A.G.; K.G.A.A.; J.A.A.;
J.D.A.F.; I.S.A.B.; J.F.D.T.; R.M.D.T.; D.S.C.V; A.M.C.F.; R.F.C.Y.; K.L.C.P.;
A.L.C.Y.; W.M.B.F.

*Plaintiffs - Appellees*

v.

Doe Run Resources Corporation

*Defendant - Appellant*

D. R. Acquisition Corporation; Marvin K. Kaiser; Theodore P. Fox, III; Jerry
Pyatt; Jeffrey L. Zelms; Renco Holdings

*Defendant*s

The Renco Group

*Defendant - Appellant*

Ira L. Rennert

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2023
Filed: April 12, 2023

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Doe Run Resources Corporation and the Renco Group appeal the district court's[1] grant of the plaintiffs' emergency motion for a protective order. We dismiss for lack of jurisdiction.

**I.**

The plaintiffs, thousands of Peruvian citizens, allege injury from Doe Run's lead-mining and smelting complex in La Oroya, Peru. Doe Run, based in St. Louis, Missouri, has operated the complex since 1997. The Renco Group owns Doe Run. The plaintiffs allege that more than ninety-nine percent of children born in La Oroya since 2005 have had lead poisoning.

The plaintiffs sued in Missouri state court, and the defendants removed the case to the United States District Court for the Eastern District of Missouri. The

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

plaintiffs also brought similar cases in the same district, all of which were consolidated for pretrial matters. In the consolidated case, the parties identified a small sample of plaintiffs whose cases would be tried first (the "trial-pool plaintiffs").

In October 2021, the defendants submitted a report to the district court about allegedly fraudulent conduct by two former "plaintiff recruiters" in Peru. The report noted that the defendants had hired Peruvian counsel to report the fraud to Peruvian law enforcement. Consequently, Peruvian authorities opened an investigation. Under Peruvian law, because the defendants reported the crime, they could suggest witnesses for Peruvian prosecutors to interview and they could attend the interviews.

To support their fraud allegations, the defendants sought certain discovery in this case. They proposed a verification procedure for all plaintiffs, requested the appointment of a special master to investigate fraud, and sought discovery from a non-trial-pool plaintiff about his relationship with plaintiffs' counsel. The plaintiffs opposed these efforts; they proposed a more targeted means to test the impact of the alleged fraud and filed for a protective order to bar the defendants from obtaining discovery from the non-trial-pool plaintiff. The plaintiffs also filed an emergency motion for a protective order to prohibit the defendants' Peruvian counsel from participating in witness interviews in the Peruvian criminal investigation, claiming that it would be impermissible *ex parte* communication. *See* Mo. R. Prof. Conduct 4-4.2. In one sweeping order, the district court denied the defendants' requests and granted the plaintiffs' requested protective orders. The order did not provide the reasons for granting the emergency motion. Yet in a prior hearing where the motion was discussed, the district court said, "To the extent that there are . . . current plaintiffs and clients, obviously [the defendants'] counsel and any of [the defendants'] agents cannot participate. . . . If they are an active client, I don't want [defendants' Peruvian counsel] in the room when they are interviewed by prosecutors or law enforcement." The defendants appeal the grant of the plaintiffs' emergency motion for a protective order.

After appealing, the defendants moved to stay the protective order pending appeal. The court denied the motion because it did not want the defendants to talk directly with plaintiffs through the Peruvian criminal witness interviews about a subject related to the litigation—fraud. It explained that the "criminal investigation is directed at issues that are inextricably intertwined with the discovery issues before this Court in this matter" and "[t]he information Defendants' Peruvian counsel gains from their participation in interviewing plaintiffs in this investigation . . . could not be obtained by Defendants' counsel in this case."

In this court, the plaintiffs then filed a motion to dismiss the appeal for lack of jurisdiction. But after the plaintiffs filed their merits brief, they moved to withdraw their motion to dismiss, conceding that we have jurisdiction under 28 U.S.C. § 1292(a)(1).

Meanwhile, the defendants have filed actions in other courts related to their fraud allegations. In the Southern District of Florida, the defendants filed a 28 U.S.C. § 1782 application to take discovery, seeking materials to aid the ongoing fraud investigation in Peru. In Florida state court, the defendants brought malicious-prosecution and negligent-supervision claims against two former plaintiff recruiters, alleging that they fabricated evidence supporting some of the claims in the Missouri cases.

**II.**

Before reaching the merits, we must independently determine whether we have jurisdiction, even though the parties now agree that we do. *See City of Kansas City v. Yarco Co.*, 625 F.3d 1038, 1040 (8th Cir. 2010). The protective order does not itself resolve the case, *see* 28 U.S.C. § 1291, but the parties argue that we have jurisdiction under either the collateral order doctrine or § 1292(a)(1). We disagree.

-4-

A.

We first address the collateral order doctrine.  Generally, appellate courts have jurisdiction "of appeals from all final decisions of the district courts of the United States."  § 1291.  Under the collateral order doctrine, "final decisions" includes a "small class of rulings, not concluding the litigation, but conclusively resolving claims of right separable from, and collateral to, rights asserted in the action."  *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotation marks omitted).  We have jurisdiction to review a collateral order if it (1) "conclusively determine[s] the disputed question," (2) "resolve[s] an important issue completely separate from the merits of the action," and (3) is "effectively unreviewable on appeal from a final injunction."  *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276 (1988).  The collateral order doctrine is narrow.  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009); *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) ("[W]e have . . . repeatedly stressed that the 'narrow' exception should stay that way and never be allowed to swallow the general rule . . . .").  "That a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment has never sufficed."  *Mohawk*, 558 U.S. at 107 (ellipsis and internal quotation marks omitted).  "Instead, the decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order."  *Id.* (internal quotation marks omitted).

Our jurisdictional inquiry under the collateral order doctrine looks beyond the particular order being appealed and focuses instead on the class of claims that the challenged order resolves.  *Id.* at 107; *see Digital Equip.*, 511 U.S. at 868.  "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under [the collateral order doctrine]."  *Mohawk*, 558 U.S. at 107 (brackets and internal quotation marks omitted).  So, for example, the Supreme Court has addressed whether orders denying attorney-client privilege and orders rejecting the defense-of-judgment bar under 28

U.S.C. § 2676 are collateral orders. *See id.* at 114 (evaluating orders denying attorney-client privilege); *Hallock*, 546 U.S. at 355 (evaluating orders rejecting the defense-of-judgment bar under 28 U.S.C. § 2676).

The Supreme Court has declined to extend the collateral order doctrine to categories of orders affecting rights that can be adequately protected without an immediate appeal. Pretrial discovery orders, for example, are generally not immediately appealable because "in the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981). And orders denying attorney-client privilege are not immediately appealable because litigants can petition for a writ of mandamus or ask the district court to certify, and the appellate court to accept, an interlocutory appeal under 28 U.S.C. § 1292(b). *Mohawk*, 558 U.S. at 110-11.

Here, we must first determine how to classify the district court's order. We conclude that it is an order prohibiting *ex parte* communication. The plaintiffs' emergency motion requested a "Protective Order to Prevent Ex Parte Communication with Plaintiffs," and the district court's legal basis for granting the motion was Missouri Rule of Professional Conduct 4-4.2. The defendants classify the challenged order as prohibiting participation in a foreign law-enforcement investigation. We disagree. True, the order prohibits the defendants' Peruvian counsel from attending witness interviews in a foreign law-enforcement investigation. But the order does not prohibit the defendants from *participating* in the investigation. Peruvian counsel can still present evidence to, suggest questions for, and communicate with the prosecutor. Further, in a hearing where several discovery issues were discussed, the district court explained that it did not want defendants' Peruvian counsel talking with current plaintiffs. And in its denial of the motion to stay, the district court said it granted the emergency motion "to prevent Defendants from using a criminal investigation to have their lawyers communicate

with current plaintiffs about the subject of this lawsuit."[2]  Thus, the challenged order is properly classified as an order prohibiting *ex parte* communication with represented parties.

Such orders are not effectively unreviewable on appeal from a final judgment, so the collateral order doctrine does not apply here.  That Peruvian law may allow this communication and the right may be important does not mean that all orders prohibiting *ex parte* communication are immediately appealable.  *See Mohawk*, 558 U.S. at 108-09 (acknowledging the importance of attorney-client privilege but nonetheless concluding that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege").  As with most pretrial discovery orders, a litigant ordered to refrain from *ex parte* communication can seek other remedies that will sufficiently protect his rights.  *See, e.g.*, *Firestone Tire*, 449 U.S. at 377-78 (holding that orders refusing to disqualify counsel are not immediately appealable because there is usually an adequate remedy after final judgment—the court of appeals can vacate the judgment and order a new trial).  When prohibited from engaging in an *ex parte* communication, a litigant can, as in *Mohawk*, appeal the order after final judgment, request certification of an interlocutory appeal under 28 U.S.C. § 1292(b), petition the appellate court for a writ of mandamus, or defy the order and incur sanctions, which may be immediately appealable if a criminal-contempt order is issued.  *See* 558 U.S. at 101, 108-11 ("Alternatively, when the circumstances warrant, a district court may issue a contempt order against a noncomplying party, who can then appeal directly from that ruling, at least when the contempt citation can be characterized as a criminal punishment."); *cf. Good Stewardship Christian Ctr. v. Empire Bank*, 341 F.3d 794,

---

[2]Moreover, the defendants' classification of the challenged order is too narrow, "amount[ing] to an 'individualized jurisdictional inquiry' largely based on the facts of the case, which is prohibited."  *See Nice v. L-3 Commc'ns Vertex Aerospace LLC*, 885 F.3d 1308, 1312 n.5 (11th Cir. 2018) (per curiam) (quoting *Mohawk*, 558 U.S. at 107); *see also Leonard v. Martin*, 38 F.4th 481, 488 (5th Cir. 2022) (explaining that "the class of orders should be defined at a higher level of generality").

795-96 (8th Cir. 2003) (describing how the district court imposed sanctions for the defiance of a protective order issued after improper *ex parte* communications); *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1117 (8th Cir. 1997) (explaining that the district court ordered various sanctions when counsel engaged in *ex parte* communication with a represented adverse party despite warnings not to); *Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1206, 1208 (10th Cir. 2000) (reviewing after final judgment the district court's order disqualifying an attorney for engaging in an *ex parte* communication).

The defendants argue that the harm caused by this specific challenged order cannot be remedied after final judgment because the error impacts a foreign proceeding. But the question under the collateral order doctrine is not whether a specific order is effectively unreviewable on appeal from a final judgment; rather, it is whether the class of claims as a whole is effectively unreviewable on appeal from a final judgment. *See Gulfstream*, 485 U.S. at 276. We already concluded that, in general, orders prohibiting *ex parte* communication are not effectively unreviewable on appeal from a final judgment. And even if the challenged order here caused harm that could not be remedied after final judgment, the defendants have remedies other than appealing after final judgment that they can pursue now: ask the district court to certify an interlocutory appeal under § 1292(b), petition us for a writ of mandamus, or defy the order and incur sanctions (even though sanctions may not be immediately appealable). *See Mohawk*, 558 U.S. at 101; *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 210 (1999) (holding that a sanctions order imposed solely on an attorney is not immediately appealable). "Although there may be situations in which a party will be irreparably damaged if forced to wait until final resolution of the underlying litigation before securing review of [a specific] order . . . , it is not necessary, in order to resolve those situations, to create a general rule permitting the appeal of all such orders." *Firestone*, 449 U.S. at 379 n.13 (explaining that if a specific order within the larger class of claims is effectively unreviewable absent immediate appeal, the moving party can seek a narrower order, ask the district court to reconsider, request the issue to be certified for interlocutory appeal, or ask for a writ of mandamus).

In sum, orders prohibiting *ex parte* communication are not effectively unreviewable on appeal from final judgment. Thus, the defendants cannot appeal the challenged order under the collateral order doctrine.

B.

Nor is the order appealable under § 1292(a)(1). Section 1292(a)(1) permits appeals for interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions." It "provide[s] appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have serious, perhaps irreparable, consequence." *Gulfstream*, 485 U.S. at 287-88 (internal quotation marks omitted). Generally, discovery orders, though "they have the form of an injunction (an order to do or not do something . . .)," "are deemed not to be injunctions within the meaning of section 1292(a)(1)." *Allendale Mut. Ins. v. Bull Data Sys., Inc.*, 32 F.3d 1175, 1176-77 (7th Cir. 1994).

"In determining whether the district court acted specifically to grant injunctive relief, we examine the language of the order, the grounds on which it rests, and the circumstances in which it was entered." *Morgenstern v. Wilson*, 29 F.3d 1291, 1295 (8th Cir. 1994) (brackets and internal quotation marks omitted). "An order has the practical effect of an injunction for purposes of appeal if it is directed to one or more of the parties, is coercive and equitable in nature, is enforceable by contempt, and grants at least some of the relief that is sought in the litigation." 19 James W. Moore et al., Moore's Federal Practice § 203.10[2][a] (3d ed. 2023); *United States v. Samueli*, 582 F.3d 988, 993 (9th Cir. 2009); *United States v. E-Gold, Ltd.*, 521 F.3d 411, 415 (D.C. Cir. 2008); *DiTucci v. Bowser*, 985 F.3d 804, 808-09 (10th Cir. 2021); *see also Tenkku v. Normandy Bank*, 218 F.3d 926, 927 (8th Cir. 2000) (relying on 19 Moore's Federal Practice § 203.10[6][a]).

Thus, to determine whether the challenged order is appealable under § 1292(a)(1), we must determine whether it grants or denies an injunction or has the practical effect of granting or denying an injunction. *See Morgenstern*, 29 F.3d at

1294. The defendants do not argue that the district court acted specifically to grant or deny injunctive relief, *see id.* at 1295, and we agree the district court did not do so because neither the plaintiffs' motion nor the district court explicitly mentioned injunctive relief. Instead, the defendants argue that the challenged order has the effect of an anti-suit injunction and thus is appealable because it enjoins the defendants' Peruvian counsel from attending Peruvian law-enforcement interviews of current plaintiffs.[3]

But the defendants provide no legal support for the proposition that an order that merely affects foreign proceedings—but does not enjoin a party from participating in them—is immediately appealable under § 1292(a)(1). They argue that the order is unlike a discovery or case-management order that could not be appealed under § 1292(a)(1). They rely on language from the Supreme Court stating, "An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." *Gulfstream*, 485 U.S. at 279. But the inverse is not necessarily true. *Gulfstream* does not state that an order that might not relate only to the conduct or progress of litigation before the court is an injunction. *See id.* Absent additional legal support, we do not interpret *Gulfstream* to mean that an order that merely affects a proceeding elsewhere is appealable under § 1292(a)(1).

Moreover, we doubt that the challenged order is unrelated to the conduct or progress of litigation before the district court. According to the district court, the Peruvian criminal investigation "is directed at issues that are inextricably intertwined with the discovery issues before [the district court]," and the information obtained

_____

[3]The defendants do not argue that the challenged order is actually an anti-suit injunction. Anti-suit injunctions involve the power of federal courts "to enjoin persons subject to their jurisdiction from prosecuting foreign suits." *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 359 (8th Cir. 2007). The challenged order is unlike an anti-suit injunction because it does not prohibit the defendants from prosecuting any foreign suit—it only prohibits their Peruvian counsel from attending witness interviews.

from the witness interviews "could not be obtained by Defendants' counsel in this case." That the prohibited communication would occur in a Peruvian criminal investigation and not in the United States was immaterial to the district court; it was concerned about whether the defendants were circumventing discovery rulings—a matter relating to the conduct of litigation before the court.

Though the order is not appealable merely by virtue of its effect on a foreign criminal investigation, it may nevertheless be appealable if it has the practical effect of an injunction and has serious, irreparable consequences. *See Gulfstream*, 485 U.S. at 287-88. We conclude that the order does not have that effect. For one, it does not "grant[] at least some of the relief that is sought in the litigation," 19 Moore's Federal Practice § 203.10[2][a], because the plaintiffs allege personal injury from lead poisoning. Moreover, the defendants have not demonstrated that it has serious, irreparable consequences. *Id.* at 1294. Indeed, in their response to the motion to dismiss, the defendants do not explain how they are irreparably harmed by their Peruvian counsel's inability to attend the witness interviews. Even though the defendants' Peruvian counsel cannot attend witness interviews, the defendants have continued to pursue their fraud theory in Missouri federal court and in the Florida actions. We therefore lack jurisdiction over the challenged order under § 1292(a)(1).

## III.

For the foregoing reasons, we grant the plaintiffs' motion to dismiss for lack of jurisdiction and deny the plaintiffs' motion to withdraw their motion to dismiss as moot.

_____