# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ADVENT INTERNATIONAL, L.P f/k/a/ )
ADVENT INTERNATIONAL )
CORPORATION, ADVENT )
INTERNATIONAL PE ADVISORS, S.C., )
ADVENT LATIN AMERICAN PRIVATE )
EQUITY FUND III LIMITED )
PARTNERSHIP, ADVENT LATIN )
AMERICAN PRIVATE EQUITY FUND )
III-A LIMITED PARTNERSHIP, )
ADVENT LATIN AMERICAN PRIVATE )
EQUITY FUND III-B LIMITED )
PARTNERSHIP, ADVENT LATIN )
AMERICAN PRIVATE EQUITY FUND )
III-C LIMITED PARTNERSHIP, )
ADVENT LATIN AMERICAN PRIVATE )
EQUITY FUND III-D LIMITED )
PARTNERSHIP, ADVENT LATIN )
AMERICAN PRIVATE EQUITY FUND )
III-E LIMITED PARTNERSHIP, ADVENT )
LATIN AMERICAN PRIVATE EQUITY )
FUND III-F LIMITED PARTNERSHIP, )
ADVENT LATIN AMERICAN PRIVATE )
EQUITY FUND III-G LIMITED )
PARTNERSHIP, ADVENT PARTNERS )
LAPEF III LIMITED PARTNERSHIP, )
ADVENT LATIN AMERICAN PRIVATE )
EQUITY FUND IV LIMITED )
PARTNERSHIP, ADVENT LATIN )
AMERICAN PRIVATE EQUITY FUND )
IV-A LIMITED PARTNERSHIP, )
ADVENT LATIN AMERICAN PRIVATE )
EQUITY FUND IV-B LIMITED )
PARTNERSHIP, ADVENT LATIN )
AMERICAN PRIVATE EQUITY )
FUND IV-C LIMITED PARTNERSHIP, )
ADVENT LATIN AMERICAN PRIVATE )
EQUITY FUND IV-D LIMITED )

PARTNERSHIP, ADVENT LATIN )
AMERICAN PRIVATE EQUITY FUND )
IV-E LIMITED PARTNERSHIP, )
ADVENT LATIN AMERICAN PRIVATE )
EQUITY FUND IV-F LIMITED )
PARTNERSHIP, ADVENT LATIN )
AMERICAN PRIVATE EQUITY FUND )
IV-G LIMITED PARTNERSHIP, )
ADVENT PARTNERS LAPEF IV )
LIMITED PARTNERSHIP, ADVENT )
PARTNERS III LIMITED )
PARTNERSHIP, )
         )
         Plaintiffs, )
         )
         v. ) C.A. No. 2023-0647-LWW
         )
SERVICIOS FUNERARIOS GG S.A. DE C.V., )
         )
         Defendant. )

**MEMORANDUM OPINION**

Date Submitted: July 31, 2024
Date Decided: October 29, 2024

William M. Lafferty, Kevin M. Coen & Alex F. Hoeschel, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, Delaware; Peter L. Welsh & Daniel V. Ward, ROPES & GRAY LLP, Boston, Massachusetts; Nicholas A. S. Hoy & Andrew J. Rossman, QUINN EMANUEL URQUHART & SULLIVAN LLP, New York, NY; Joseph Margolies, QUINN EMANUEL URQUHART & SULLIVAN LLP, Chicago, Illinois; Gabriel F. Soledad, QUINN EMANUEL URQUHART & SULLIVAN LLP, Washington, D.C.; *Counsel for Plaintiffs*

Peter J. Walsh, Jr., Aaron R. Sims & Charles R. Hallinan, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; David Boies & Marc Ayala, BOIES SCHILLER FLEXNER LLP, Armonk, New York; Carlos M. Sires, BOIES SCHILLER FLEXNER LLP, Fort Lauderdale, Florida; *Counsel for Defendant*

**WILL, Vice Chancellor**

A Mexican holding company purchased a Mexican funeral services company from private equity-owned special purpose vehicles. Along with a stock purchase agreement, the parties negotiated a guarantee by which private equity funds agreed to backstop the special purpose vehicles' indemnification obligations to the buyer. In return, the buyer agreed to a release, a non-recourse provision, covenants not to sue non-parties to the agreements, and a Delaware forum provision for permitted claims.

The buyer nevertheless initiated civil and criminal proceedings in Mexico against the private equity firm affiliated with the guarantor funds—a contractual non-party. In response, the guarantors and private equity firm sued the buyer in this court, seeking anti-suit injunctions and declaratory relief. Since the private equity firm's substantive response to the Mexican civil action was due imminently, I expedited consideration of that claim. In June, I enjoined the buyer from prosecuting the Mexican civil action against the private equity firm.

Now, I resolve the remaining non-expedited issues. I decline to issue an anti-suit injunction of the Mexican criminal action for reasons of international comity. And I clarify that, due to laches, the injunction of the Mexican civil action does not extend to the private equity firm's Mexican affiliate. On the contract claims, however, I enter judgment largely in the private equity plaintiffs' favor. I hold that the buyer breached the guarantee, causing it to terminate by its terms.

1

## I.    ESSENTIAL FACTS

This decision complements a June 7, 2024 memorandum opinion (the "June Opinion") that granted partial summary judgment and denied motions to dismiss.[1] The facts framing this dispute are set out in the June Opinion and remain unchanged. For the benefit of the reader, I recount the basic facts below.

Unless otherwise noted, the following summary is drawn from the undisputed facts outlined in the June Opinion, the pleadings, and exhibits submitted by the parties.

### A.    The Share Purchase Agreement

In 2021, Servicios Funerarios GG S.A. de C.V.—an acquisition vehicle of a Mexican real estate investor—purchased Mexican funeral company Grupo Gayosso S.A. ("Gayosso") from Advent International Corporation, a private equity firm.[2] At the time, Advent International owned substantially all of Gayosso's capital stock through various affiliated funds (the "Guarantors").[3] The Guarantors' interests in Gayosso were, in turn, held through seven special purpose vehicles (the "Sellers").[4]

---

[1] *See generally Advent Int'l Corp. v. Servicios Funerarios GG S.A. de C.V.*, 2024 WL 3580934 (Del. Ch. June 7, 2024) ("June Op.").

[2] *Id.* at *2.

[3] *Id.* at *1.

[4] *Id.*

In January 2021, the Sellers and Servicios Funerarios executed a Share Purchase Agreement (the "SPA") contemplating Servicios Funerarios's acquisition of Gayosso for 4.076 million pesos. The SPA outlined representations by Servicios Funerarios, the Sellers, and Gayosso. It also set an indemnification cap limiting Servicios Funerarios's recovery from the Sellers to Gayosso's enterprise value.[5] The Sellers were subsequently dissolved.[6]

## B.    The Guarantee

As a condition to and concurrent with the SPA, the Guarantors executed a financial guarantee (the "Guarantee") of the Sellers' indemnification obligations to Servicios Funerarios up to the full purchase price.[7]    In exchange, Servicios

---

[5] *Id.* at *2. Specifically, the indemnification cap limited the maximum recovery to 300 million pesos (approximately $17 million) for certain defined "Losses" resulting from "any breach of [the Sellers'] respective obligations assumed" in the SPA or "the lack of veracity in the statements of the Sellers and [Gayosso]." *Id.* It also defined additional "Losses" to which this initial indemnification cap did not apply, such that the maximum recovery was the full enterprise value of 4.076 million pesos. *Id.*

[6] *Id.*

[7] *Id.*; Verified Second Am. Compl. for Inj. Relief (Dkt. 68) ("Compl.") Ex. A ("Guarantee").

Funerarios agreed to waive and release all "Claims" in connection with the SPA against "Non-Parties."[8]  Advent International is one such Non-Party.[9]

Servicios Funerarios preserved two pathways to recover for wrongdoing related to the Gayosso transaction: suing (1) the Guarantors under the Guarantee, or (2) the Sellers under the SPA.[10]  Servicios Funerarios "irrevocably agree[d] that any permitted Claim [would] be brought exclusively in the state and federal courts located in the . . . State of Delaware."[11]

Several provisions of the Guarantee reflect Servicios Funerarios's agreement to waive or disclaim its ability to bring claims against non-parties.

---

[8] "Non-Parties" include: "(i) any past, present or future director, officer, employee, incorporator, member, partner, manager, direct or indirect equityholder, management company, Affiliate (other than [the Sellers] or any assignee of [the Sellers] or of a Guarantor under the [SPA] or hereunder), agent, attorney, or representative of, and any financial advisor or lender to (all above-described Persons in this subclause (i), each a 'Related Party') to a Guarantor or any Affiliate of a Guarantor, and (ii) any Related Party of such Guarantor's Related Parties."  Guarantee § 9(a).

[9] June Op. *8.

[10] "Claims" include: "all claims, obligations, liabilities, causes of action, or proceedings (in each case, whether at law or in equity, and whether sounding in contract, tort, statute or otherwise) that may be based upon, in respect of, arise under, out or by reason of, be connected with, or relate in any manner to this Guarantee, or the negotiation, execution, performance, or breach (whether willful, intentional, unintentional or otherwise) of this Guarantee, including, without limitation, any representation or warranty made or alleged to be made in, in connection with, or an as [sic] inducement to, this Guarantee . . . ."  Guarantee § 9(a).

[11] *Id.* § 10.

Section 3(c) of the Guarantee is a covenant not to sue. It provides that Servicios Funerarios:

> covenants and agrees that it shall not institute or assert . . . any action or proceeding or bring any other Claim . . . of any kind whatsoever against the Guarantors, [the Sellers] or any other Non-Parties . . . except for claims against: (i) the Guarantors under and pursuant to this Guarantee and (ii) [the Sellers] under and pursuant to the Agreement.[12]

Section 9(a) is a non-recourse clause. Servicios Funerarios agreed that a Claim "may be made or asserted only against (and [is] expressly limited to) the Guarantors."[13] It also confirmed that no "Non-Parties . . . shall have any liability or obligation" to it "in respect of any Claims."[14]

Section 9(b) is a release and anti-reliance provision. Servicios Funerarios broadly "waive[d], release[d] and disclaim[ed] any and all Claims against all Non-Parties, including, without limitation, any Claims to avoid or disregard the entity form of any Guarantor or otherwise seek to impose any liability arising out of, relating to or in connection with a Claim on any Non-Parties . . . ."[15] It also "disclaim[ed] any reliance upon any Non-Parties with respect to the performance of

---

[12] *Id.* § 3(c).

[13] *Id.* § 9(a).

[14] *Id.*

[15] *Id.* § 9(b)(i).

th[e] Guarantee or any representation or warranty made in connection with, or as an inducement to th[e] Guarantee."[16]

Section 9(c) is another covenant not to sue. Servicios Funerarios confirmed that it would not bring:

> any Claim whatsoever against . . . Non-Parties . . . in connection with th[e] Guarantee or the [SPA] or any transactions contemplated hereby or thereby . . . other than a claim . . . against the Guarantors for payment or performance of the Obligations pursuant to (and as limited by) the terms of th[e] Guarantee or . . . against [the Sellers] pursuant to [the SPA].[17]

The Guarantee includes a termination clause in Section 8. The parties agreed that if Servicios Funerarios brought claims in breach of Section 9, the Guarantee would "terminate automatically and immediately."[18] In full, the provision states that:

> Th[e] Guarantee shall terminate automatically and immediately . . . and the Guarantors shall have no further obligations under th[e] Guarantee as of . . . the date of commencement of any litigation or other proceeding by the Guaranteed Party or any Affiliate thereof . . . prohibited by Section 9 of th[e] Guarantee . . . . [19]

---

[16] *Id.* § 9(b)(ii).

[17] *Id.* § 9(c)(ii).

[18] *Id.* § 8.

[19] *Id.*

6

Finally, Section 9 provides that these releases and covenants not to sue survive the termination of the Guarantee.[20]

## C. Servicios Funerarios's Lawsuits

Fourteen months after the Gayosso transaction closed, in March 2022, Servicios Funerarios filed a civil suit in a Mexican federal court related to the SPA against Advent International, Advent International PE Advisors, S.C. ("Advent Mexico," Advent International's Mexican subsidiary), and various Advent-affiliated funds.[21] Servicios Funerarios's complaint alleged that the Sellers, Advent International, and Advent Mexico "omitted to truthfully reflect, disclose and/or record the financial and accounting reality of Gayosso . . . at the time of the signing of the SPA."[22] It sought damages and a judicial declaration that the SPA was a "nullity."[23]

Four months later, in June 2022, Servicios Funerarios initiated a criminal proceeding with a Mexican prosecutor against Advent International, certain current and former Advent employees, and Advent Mexico.[24] Under Mexican law, criminal proceedings can be initiated by non-state actors through a private complaint called a

---

[20] *Id.* § 9(b).

[21] Compl. ¶ 91.

[22] Compl. Ex. C.

[23] *Id.*

[24] Compl. ¶¶ 104, 106; Compl. Ex. D.

*querella*.[25]  Servicios Funerarios's *querella* asserted fraud in connection with the SPA.[26]

Nearly a year later, in March 2023, Servicios Funerarios filed claims against Advent International in the United States District Court for the District of Massachusetts.[27]  The claims in Massachusetts involve alleged false representations in the SPA that induced Servicios Funerarios to enter into the Gayosso transaction.[28]

### D.    This Litigation

In June 2023, Advent International and affiliated funds (together, "Advent") sued Servicios Funerarios in this court for breach of the Guarantee.  They sought damages, declaratory judgments concerning the validity of the suit under the Guarantee, and an anti-suit injunction of the Mexican civil action.  Briefing on cross-motions for summary judgment and to dismiss was completed in March 2024.[29]

In April 2024, after Advent International was served with the Mexican civil complaint and required to respond, the anti-suit injunction request was heard on an

---

[25] Compl. ¶ 103; *see* Pls.' Opening Suppl. Submission in Supp. of an Order Permanently Enjoining the Mexican Criminal Action (Dkt. 69) Ex. 2; Def.'s Opp'n to Pls.' Opening Suppl. Submission (Dkt. 82) Ex. A.

[26] Compl. Ex. D.

[27] Compl. Ex. E.

[28] *Id.* ¶¶ 48-74.

[29] *See* Dkt. 38.

expedited basis. On June 7, 2024, I granted an anti-suit injunction concerning the Mexican civil action as brought against Advent International.[30] The June Opinion set out my reasoning.

I denied Servicios Funerarios's motion to dismiss and concluded that the court had subject matter jurisdiction over the suit.[31] I declined to stay this suit in deference to the Massachusetts action.[32] And I held that the Mexican civil action breached the forum selection clause in the Guarantee.[33] Supplemental submissions about the propriety of an anti-suit injunction for the Mexican criminal action were requested.[34]

My June 7, 2024 order (the "Injunction Order") stated that "Servicios Funerarios is permanently enjoined from prosecuting the Mexican [c]ivil [a]ction in any forum other than the courts designated in the forum selection clause in Section 10 of the Guarantee."[35]

---

[30] Dkt. 53.

[31] June Op. *4-6.

[32] *Id.* at *6-7.

[33] *Id.* at *12.

[34] *Id.* ("From my limited understanding of Mexican criminal procedure, it is unclear by whom (and how) the case was initiated and whether the prosecutor can (or would) stop the case if Servicios Funerarios were enjoined from pressing it. Before I wade into that topic, I expect the parties to provide supplemental submissions on the status and procedure of the Mexican criminal action.").

[35] Dkt. 53.

Regrettably, the parties could not agree on how to effectuate the Injunction Order. Advent claimed that the Injunction Order extended to Advent Mexico—even though it was then a non-party to this lawsuit and unmentioned in the June Opinion. Advent also asserted that the Injunction Order required Servicios Funerarios to dismiss with prejudice its claims in the Mexican civil action—though the June Opinion said nothing of the sort. Servicios Funerarios disagreed with both contentions. Advent International therefore had to answer the complaint in the Mexican civil action despite the June Opinion and Injunction Order. Servicios Funerarios moved for clarification the next week.[36]

For over a month, the parties remained unable to agree on how to implement the Injunction Order. The Mexican civil action proceeded. In July, Servicios Funerarios asked for permission to file a substantive reply to Advent International's answer in the Mexican criminal action.[37] I "decline[d] to affirmatively grant [it] permission to violate my [Injunction Order]."[38] After a flurry of letters, a reasoned outcome emerged: the Mexican civil action was stayed at the request of the parties and with the blessing of the presiding judge.[39]

---

[36] Dkt. 54.

[37] *See* Dkt. 78.

[38] Dkt. 79.

[39] *See* Dkt. 89; Dkt. 96.

This stay mooted Servicios Funerarios's motion for clarification in part. But whether the Injunction Order applied to claims against Advent Mexico remained unresolved. Advent, which had not sought relief on behalf of non-party Advent Mexico, asked to amend its complaint to do so. Servicios Funerarios consented to the amendment, so long as further summary judgment briefing was not required.[40] A second amended complaint (the operative "Complaint") was filed on July 3, seeking relief on behalf of Advent Mexico and the individual Advent employees defending the Mexican criminal action.[41]

Meanwhile, the supplemental submissions requested by the June Opinion were filed. These submissions focused on the nature of the Mexican criminal action and whether this court can enjoin it.[42]

On July 31, 2024, oral argument on these issues was held.[43]

---

[40] *See* Dkts. 72-73.

[41] Dkt. 68. Servicios Funerarios has moved to dismiss that complaint. Dkt. 75. Nevertheless, for efficiency's sake, the parties asked to for the court to resolve the summary judgment arguments remaining after the expedited June Opinion. *See* Dkts. 73, 99.

[42] *See* Dkts. 69, 82, 94.

[43] Dkt. 99. Servicios Funerarios subsequently moved to supplement the record. Def.'s Mot. for Leave to Suppl. the Record (Dkt. 102). It argued that: (1) contrary to representations of counsel during the July 31 hearing, questions of fact remained regarding the Guarantors' ability to meet its funding obligations under the Guarantee, warranting denial of summary judgment; (2) Advent's counsel mischaracterized the law by stating that one contract must be incorporated expressly into the other; and (3) Section 9(b)(ii) of the Guarantee is a "non-recourse" rather than "anti-reliance" provision that does not preclude Servicios Funerarios's reliance on representations in the SPA. *Id.* at 3 (citing Tr. of July 31, 2024 Oral Arg. (Dkt. 29) ("July Hr'g Tr.") 65); *Id.* at Ex. 1. In opposing the motion, Advent argues that Servicios Funerarios waived its first and third arguments because it

11

## II.    LEGAL ANALYSIS

Under Court of Chancery Rule 56, summary judgment is granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[44]   "[T]he facts must be viewed in the light most favorable to the nonmoving party and the moving party has the burden of demonstrating that there is no material question of fact."[45]

Two categories of matters are before the court.  The first category concerns whether Servicios Funerarios breached the Guarantee by pursuing prohibited litigation, and if so, whether the breach caused the Guarantee to terminate.  The second category concerns Advent's request to extend the Injunction Order to include (1) the claims against Advent Mexico in the Mexican civil action and (2) the Mexican criminal action.

---

could have, but failed to, raise them in its summary judgment briefing.  Pls.' Opp'n to Def.'s Mot. for Leave to Supplement the Record (Dkt. 104) ¶¶ 15-16.  I agree; these arguments are waived.  *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").  Regarding Servicios Funerarios's second argument, Advent contends that the issues were already addressed by both parties in their summary judgment briefs.  *Id.* ¶ 17.  I agree with Advent on this point as well.  Servicios Funerarios did not request, and was not granted, an opportunity to submit further summary judgment briefing.  The motion to supplement is denied.

[44] Ct. Ch. R. 56.

[45] *Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Hldgs. Co.*, 853 A.2d 124, 126 (Del. Ch. 2004).

I resolve the first category in Advent's favor. Servicios Funerarios breached Sections 3(c) and 9 of the Guarantee when it filed the Mexican civil action against Advent International. The breaches of Section 9 caused the Guarantee to terminate by its terms.

I resolve the second category in favor of Servicios Funerarios. I decline to enjoin the Mexican criminal action based on international comity concerns. And though Servicios Funerarios breached the Guarantee by prosecuting the Mexican civil action against Advent Mexico, I decline to enter an injunction due to laches.

### A.    Breach and Termination of the Guarantee

"Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."[46]  Advent contends that the Guarantee obligated Servicios Funerarios not to sue "Non-Parties" like Advent International for claims involving the Gayosso transaction. It maintains that Servicios Funerarios breached the Guarantee by filing the Mexican and Massachusetts actions.

The Guarantee is governed by Delaware law.[47]  "Delaware law adheres to the objective theory of contracts," meaning that "a contract's construction should be that

---

[46] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).

[47] Guarantee § 10.

which would be understood by an objective, reasonable third party."[48]  "When interpreting a contract, [the] Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement.'"[49]  The court must construe the contract "as a whole and . . . will give each provision and term effect, so as not to render any part of the contract mere surplusage."[50]  A court will not look beyond the four corners of an agreement if a contract is unambiguous.[51]  Ambiguity exists only if "the provisions in controversy are fairly susceptible of different interpretations."[52]  "The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous.  The determination of ambiguity lies within the sole province of the court."[53]

---

[48] *Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).

[49] *Id.* at 368 (quoting *GMG Cap. Invs., LLC*, 36 A.3d at 779).

[50] *Osborn*, 991 A.2d at 1159 (quoting *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 2010 WL 779992, at *2 (Del. Mar. 8, 2010)).

[51] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."); *ITG Brands, LLC v. Reynolds Am., Inc.*, 2019 WL 4593495, at *4 (Del. Ch. Sept. 23, 2019) ("Clear and unambiguous language . . . should be given its ordinary and usual meaning." (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006))).  Neither party argues that the portions of the Guarantee at issue are ambiguous.  Nor do I find any ambiguity.

[52] *Eagle Indus.*, 702 A.2d at 1232.

[53] *Osborn*, 991 A.2d at 1160 (citation omitted).

14

The Delaware Supreme Court "'has described pure matters of contractual interpretation as readily amenable to summary judgment,' because 'proper interpretation of language in a contract . . . is treated as a question of law.'"[54] Delaware courts will grant summary judgment when the contract is unambiguous or when extrinsic evidence fails to create a triable issue of material fact.[55] The movant may be entitled to summary judgment where its proffered construction is the only reasonable interpretation of a contract.[56]

### 1. Whether the Guarantee is Enforceable

Servicios Funerarios first asserts that the Guarantee is invalid and unenforceable because the Gayosso transaction was procured by fraudulent representations and warranties in the SPA. Whether fraud induced that transaction is before the Mexican and Massachusetts courts. The merits of Servicios Funerarios's fraud claims have no bearing on this case, which concerns the Guarantee.

---

[54] *Tetragon Fin. Grp. Ltd. v. Ripple Labs Inc.*, 2021 WL 1053835, at *3 (Del. Ch. Mar. 19, 2021) (first quoting *Barton v. Club Ventures Invs. LLC*, 2013 WL 6072249, at *5 (Del. Ch. Nov. 7, 2013); and then quoting *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 478 (Del. 1991)).

[55] *Julius v. Accurus Aerospace Corp.*, 2019 WL 5681610, at *7 (Del. Ch. Oct. 31, 2019), *aff'd*, 241 A.3d 220 (Del. 2020); *see GMG Cap. Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 783 (Del. 2012) ("[I]n a dispute over the proper interpretation of a contract, summary judgment may not be awarded if the language is ambiguous and the moving party has failed to offer uncontested evidence as to the proper interpretation.").

[56] *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007).

The Guarantee includes anti-reliance and integration clauses that preclude fraud claims falling outside its four corners. These clauses provide that:

- Servicios Funerarios "disclaims any reliance upon any Non-Parties with respect to . . . any representation or warranty made . . . in connection with, or as an inducement to this Guarantee";[57] and

- the "Guarantee constitutes the entire agreement with respect to the subject matter hereof and supersedes any and all prior discussions . . . and agreements, whether written or oral . . . ."[58]

Servicios Funerarios also "agree[d] that it [would] not assert . . . that . . . the provisions of . . . Section 9 of this Guarantee [were] illegal, invalid or unenforceable in whole or in part[.]"[59]

Servicios Funerarios contends that Delaware law prohibits Advent from insulating itself from fraud using contractual limitations.[60] It relies on *ABRY Partners V, L.P. v. F&W Acquisition LLC*, where the court explained that "when a seller intentionally misrepresents a fact embodied in a contract—that is, when a seller lies—public policy will not permit a contractual provision to limit the remedy of the buyer to a capped damage claim."[61] Then-Vice Chancellor Strine observed

---

[57] Guarantee § 9(b)(ii).

[58] *Id.* § 12.

[59] *Id.* § 9(c)(i).

[60] Def.'s Omnibus Opening Br. in Supp. of its Mot. to Dismiss Pls.' Verified Am. Compl. or, in the Alternative, to Stay this Action and Answering Br. in Opp'n to Pls.' Mot. for Summ. J. (Dkt. 30) ("Def.'s Omnibus Br.") 45.

[61] 891 A.2d 1032, 1036 (Del. Ch. 2006).

that this policy maintains an equilibrium between economic efficiency and morality. On the one hand, where a factual error is made unintentionally, there is "no moral imperative to impinge on the ability of rational parties dealing at arms-length to shape their own arrangements."[62] On the other hand, where an untruth sprouts from an intent to deceive, "[t]he public policy against fraud is a strong and venerable one that is largely founded on the societal consensus that lying is wrong."[63]

But Servicios Funerarios is not asserting that the Guarantee contained fraudulent misrepresentations. Its fraud arguments concern the SPA, which is extraneous to the Guarantee. Servicios Funerarios raises the sort of "'Double Liar scenario" rejected in *ABRY*.[64] "[A] party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim."[65]

---

[62] *Id.* at 1035.

[63] *Id.* at 1036.

[64] *Id.* at 1058; *see also Online HealthNow v. CIP OCL Invs., LLC*, 2021 WL 3557857, at *12 (Del. Ch. Aug. 12, 2021) (explaining that any party who purports to rely on statements outside a contract's four corners, after disclaiming reliance on those statements, "reveals [it]self as a liar in [its] own right and so has no basis to claim harm from fraud").

[65] *ABRY*, 891 A.2d at 1036; *see also RAA Mgmt., LLC v. Savage Sports Hldgs., Inc.*, 45 A.3d 107, 119 (Del. 2012) (recognizing "Delaware's public policy in favor of enforcing contractually binding written disclaimers of reliance on representations outside of a final agreement of sale or merger").

17

Thus, Delaware courts distinguish between intra-contractual and extra-contractual fraud. The former, which concerns statements within a contract, may allow a party to avoid a contractual limitation. But where a party contracts for clear anti-reliance language, she cannot avoid that promise by alleging fraud based on extra-contractual statements.[66] The disclaimer of reliance bars her ability to claim fraud over the latter.

Servicios Funerarios acknowledges that the alleged fraudulent statements in the SPA fall outside the Guarantee's four corners.[67] It asserts that the court should nevertheless view the SPA and Guarantee as a single contract because the two were executed concurrently and effectuate one transaction.[68] It cites case law concluding that where parties to a transaction "intend[ed] [two] documents to 'operate as two halves of the same business transaction,' . . . the Court must treat them as one contract."[69]

---

[66] *See ABRY*, 891 A.2d at 1057-58; *see also Online HealthNow*, 2021 WL 3557857, at *1 n.2; *Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2020 WL 5816759, at *17 (Del. Ch. Sept. 30, 2020) ("[H]aving disclaimed reliance upon the Preliminary Closing Statement, Buyer cannot now claim that it justifiably relied upon the Preliminary Closing Statement in entering into the Purchase Agreement.").

[67] It does not allege that the release in Section 9(b) of the Guarantee was fraudulently induced.

[68] Def.'s Omnibus Br. 47-49.

[69] *Id.* at 48 (citing *Segovia v. Equities First Hldgs., LLC*, 2008 WL 2251218, at *9 (Del. Super. May 30, 2008); quoting *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1115 (Del. 1985))); *but see Eagle Force Hldgs., LLC v. Campbell*, 187 A.3d 1209,

As even this quote evinces, however, key to "incorporat[ion] [of] one document into another" is "an explicit manifestation of intent."[70] The Guarantee mentions the SPA and states that the Guarantee was intended to "induce [Servicios Funerarios] to enter into the [SPA]."[71] But it does not incorporate any of the SPA's representations and warranties into the Guarantee by reference. In fact, the Guarantee has its own representations and warranties that make no mention of the SPA.[72] The two agreements were executed by different parties (the Sellers for the SPA; the Guarantors for the Guarantee), written in different languages (Spanish for the SPA; English for the Guarantee), governed by different law (Mexican law for the SPA; Delaware law for the Guarantee), and subject to different forum selection clauses (Mexico for the SPA; Delaware for the Guarantee).[73]

---

1238 (Del. 2018) (explaining that *Shell* "speaks more to the interpretation of the contracts at issue there—and not the court's evaluation of the parties' intent to be bound").

[70] *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 819 (Del. 2018); *see also Wiggs v. Summit Midstream Partners, LLC*, 2013 WL 1286180, at *6 (Del. Ch. Mar. 28, 2013) ("Provisions in one agreement are not read into another agreement unless the wording of the agreement evidences the parties' intent to incorporate terms from another agreement."); *Murphy Marine Servs. of Del., Inc. v. GT USA Wilmington, LLC*, 2021 WL 2181424, at *6-7 (Del. Ch. May 28, 2021) ("If the documents were intended to constitute the same agreement . . . [agreement one] would likely have incorporated by reference the entirety or provisions of [agreement two] . . . .").

[71] Guarantee § 1.

[72] *See id.* § 5.

[73] Compl. Ex. B ("SPA") §§ 22-23; Guarantee § 10.

Further, Servicios Funerarios's theory is undercut by its own argument that its claims in Massachusetts and Mexico are not prohibited by the Guarantee. It asserts that "[t]he Guarantee . . . only precludes claims against Non-Parties . . . that relate to the Guarantee"—not those that relate to the SPA.[74] That is, it believes both that the Guarantee only bars claims arising from the Guarantee itself and that the Guarantee and SPA are interchangeable in negating the anti-reliance provision. These incompatible positions cannot coexist.[75]

### 2. Whether the Guarantee Terminated

In the June Opinion, I held that Servicios Funerarios breached the forum selection clause in Section 10 of the Guarantee. Now, I consider whether Servicios Funerarios breached the covenants not to sue, release, and non-recourse provisions in Sections 3(c) and 9 of the Guarantee. If Servicios Funerarios breached Section 9

---

[74] Def.'s Omnibus Br. 8.

[75] In the June Opinion, I concluded that narrowing the definition of Claims "to actions depending on the Guarantee's terms" would render "portions of the definition . . . superfluous," since various claims included in the definition—such as those sounding in tort, including fraud claims—"sweep[] beyond the enforcement or interpretation of the Guarantee." June Op. *10. Servicios Funerarios' reading of the definition of Claims would render illogical its covenant "not to pursue 'any Claim whatsoever against the Guarantors or any other Non-Parties affiliated with [the Sellers] under or in connection with th[e] Guarantee or the [SPA] . . . '" if the definition of Claims did not include litigation "in connection with . . . the [SPA]." *Id.* at *11. I held that the language in Section 9(a), which bars claims related to "any representation or warranty made or alleged to be made, in connection with, or as an inducement to, this Guarantee," was broad enough to include claims about the SPA. *Id.* at *10 (quoting Guarantee § 9(a)).

20

by commencing prohibited litigation, I must determine whether the Guarantee terminated.

### a. Breach of Section 3(c) of the Guarantee

In Section 3(c) of the Guarantee, Servicios Funerarios "covenant[ed] and agree[d] that it [would] not institute or assert . . . any action or proceeding or bring any other Claim . . . except for claims against: (i) the Guarantors under and pursuant to this Guarantee and (ii) [the Sellers] under and pursuant to the [SPA]."[76] This term barred Servicios Funerarios from filing lawsuits other than the permitted Claims against the Guarantors and Sellers.

Servicios Funerarios breached Section 3(c) when it brought Claims against Non-Parties, including the Mexican civil action against Advent International. I found in the June Opinion that both Advent International and Advent Mexico are "Non-Parties" as defined the Guarantee.[77] Servicios Funerarios does not allege otherwise.

This breach did not, however, cause the Guarantee to terminate by its terms. Section 8 provides that the Guarantee terminates upon the "commencement of any

---

[76] See *supra* note 12 and accompanying text.

[77] June Op. *9 ("Advent International (like Advent Mexico) is a 'Non-Party' to the Guarantee.").

21

litigation or other proceeding by [Servicios Funerarios] . . . prohibited by *Section 9* of th[e] Guarantee."[78]

### b. Breaches of Section 9 of the Guarantee

In Section 9 of the Guarantee, Servicios Funerarios agreed that it could only pursue certain defined Claims in connection with the Guarantee.

Section 9(a) is a non-recourse provision in which Servicios Funerarios agreed that a "Claim . . . may be made or asserted only against (and [is] expressly limited to) the Guarantors" and that "Non-Parties" had no "liability or obligation in respect of any Claims."[79]

Similarly, in Section 9(b), Servicios Funerarios "waive[d], release[d] and disclaim[ed] any and all Claims against all Non-Parties," and "disclaim[ed] any reliance upon any Non-Parties with respect to the performance of th[e] Guarantee or any representation or warranty made in connection with, or as an inducement to th[e] Guarantee."[80]

As in Section 3(c), Servicios Funerarios confirmed in Section 9(c) that it was barred from "assert[ing] . . . any Claim . . . other than a claim . . . against the Guarantors for payment or performance of the Obligations pursuant to (and as

---

[78] Guarantee § 8 (emphasis added).

[79] *Id.* § 9(a); *see supra* notes 13-14 and accompanying text.

[80] Guarantee § 9(b); *see supra* notes 15-16 and accompanying text.

22

limited by) the terms of this Guarantee or . . . against [the Sellers] pursuant to [the SPA]."[81]

As explained, Advent International is a "Non-Part[y]" under the Guarantee.[82] So is Advent Mexico.[83] Yet Servicios Funerarios brought the Mexican civil action against Advent International and Advent Mexico. In doing so, Servicios Funerarios breached Sections 9(a), 9(b), and 9(c) of the Guarantee.

These breaches of Section 9 triggered the termination provision in Section 8(a), which states that the Guarantee "terminates" upon Servicios Funerarios commencing "any litigation or other proceeding . . . prohibited by Section 9."[84] Thus, the Guarantee terminated on March 24, 2022 when Servicios Funerarios filed the Mexican civil action against Advent International and Advent Mexico. The prohibitions and releases in Section 9 concerning claims against "Non-Parties" remain in effect.[85]

### c. Servicios Funerarios's Arguments Against Termination

Servicios Funerarios argues that even if it initiated litigation prohibited by Section 9 of the Guarantee, the Guarantee would not terminate if the Sellers'

---

[81] Guarantee § 9(c); *see supra* note 17 and accompanying text.

[82] *See supra* note 9 and accompanying text; *see also supra* note 8 (defining "Non-Parties").

[83] *See supra* note 77.

[84] Guarantee § 8(a); *see supra* note 19 and accompanying text.

[85] Guarantee § 9; *see supra* note 20 and accompanying text.

representations in the SPA were inaccurate.[86]  It asserts that so long as it alleges false representations by the Sellers in the SPA, it can breach its promises in the Guarantee not to bring Claims against Non-Parties.  This argument rests on an illogical reading of Section 8 of the Guarantee.

Section 8 provides for automatic termination of the Guarantee upon "the earlier of" three circumstances: (a) the date Servicios Funerarios commences litigation "prohibited by Section 9"; (b) for any individual Guarantor, when that Guarantor's maximum guarantee obligation is satisfied; or (c) when 90 days have elapsed after the Sellers' obligation to indemnify Servicios Funerarios under Section 9(f) of the SPA terminates.[87]  Section 8 adds that the Guarantee "remain[s] in full force and effect indefinitely with respect to a Payment Event arising as a result of" inaccurate representations by the Sellers in enumerated provisions of the SPA.[88]

Servicios Funerarios calls this "full force and effect" provision a "[t]ermination [c]aveat" and argues that it qualifies each of the three termination criteria in Sections 8(a), 8(b), and 8(c).[89]  Advent, however, argues that the so-called

---

[86] Def.'s Omnibus Br. 63.

[87] Guarantee §§ 8(a)-(c).

[88] *See supra* note 19 and accompanying text.

[89] Def.'s Omnibus Br. 63.

"[t]ermination [c]aveat" only applies to Section 8(c)—not Sections 8(a) or 8(b).[90]

Advent's reading is reasonable and supported by the operative contracts. Servicios Funerarios's reading is not.

The caveat is nonsensical as applied to Section 8(a), which concerns termination of the Guarantee due to Servicios Funerarios's own breaches. Similarly, regarding Section 8(b), it would be unreasonable for the Guarantors to have additional obligations due to the "[t]ermination [c]aveat" if they satisfied their maximum payment obligations.

But, read together with the SPA, the caveat makes sense as applied to Section 8(c).[91] Under Section 9(f) of the SPA, the Sellers' obligations to indemnify Servicios Funerarios for false representations is time-limited, except for "Fundamental Representations" that "survive indefinitely."[92] These "Fundamental

---

[90] Pls.' Omnibus Reply Br. in Further Support of its Mot. for Summ. J. and Answering Br. in Opp'n to Def.'s Mot. to Dismiss or Stay (Dkt. 34) ("Pls.' Omnibus Reply Br.") 35-36.

[91] The direct reference to Section 9(f) of the SPA within Section 8(c) of the Guarantee evinces the transactional parties' intent to construe these two provisions together. *See Segovia v. Equities First Hldgs., LLC*, 2008 WL 2251218, at *9 (Del. Super. May 30, 2008).

[92] SPA § 9(f). Section 9(f) of the SPA pertains to the Sellers' period of liability under the SPA and provides that:

> (i)  The liability of the Sellers to indemnify the Purchaser or, when appropriate, the Acquirer of the Real Estate Assets, in terms of this Section will continue for a period from the Closing Date and until the date that is 36 (thirty-six) months after the Closing Date, except for (i) any lack of veracity in the Fundamental Representations that will survive indefinitely and (ii) Fiscal and Labor Matters, which will

Representations" are defined as those made by the Sellers in Section 5.1 of the SPA, except for Section 5.1(g), and 5.2(a)-(d), (n)(i), and (r)(i).[93] They are the same provisions listed in Section 8 of the Guarantee.[94] Since the Sellers' indemnification obligations relating to "Fundamental Representations" in the SPA are not time-barred, neither are the Guarantors' obligations to backstop those obligations. Thus, Section 8(c) alone is subject to this "[t]ermination [c]aveat."

Because Section 8 contemplates termination upon "the earlier of" the three circumstances in Section 8 and Section 8(a) was triggered first, it is irrelevant that the caveat might prevent termination of the Guarantee under Section 8(c). To hold otherwise would permit Servicios Funerarios to breach its promises not to sue Non-Parties except for permitted Claims against the Guarantors so long as it alleged that

---

survive until the expiration of their respective prescription term in accordance with the Applicable Law.

(ii) The obligations, agreements and commitments contained in this Contract will continue in force after the Closing Date, without limitation.

*Id.* § 9(f).

[93] *Id.* § 1. These enumerated sections of the SPA include the Sellers' representations (except those pertaining to fees paid to financial intermediaries) and Gayosso's representations about Gayosso's incorporation, capitalization, power and capacity to enter into the SPA, property ownership, and trademarks. *Id.* §§ 5.1(a)-(f), (h); *id.* § 5.2(a)-(d),(n)(i),(r)(i).

[94] *Compare* Guarantee § 8(c), *with* SPA § 1 (definition of "Fundamental Representations").

26

the Sellers made representations in the SPA. Servicios Funerarios's commercially unreasonable interpretation would eviscerate these bargained-for protections.[95]

*    *    *

The Guarantee is a valid and binding contract. Servicios Funerarios has breached Sections 3(c) and 9(a)-(c) of the Guarantee by suing Advent International and Advent Mexico in the Mexican civil action. As a result of the breaches of Section 9, the Guarantee terminated under Section 8(a) upon the filing of the Mexican civil action against Advent International and Advent Mexico.

Advent is entitled to the related declaratory relief sought in Count IV to its Complaint in part. Servicios Funerarios was contractually barred by the Guarantee from bringing the Mexican civil action against Advent International and Advent Mexico. Advent is also entitled to the declaration sought in Count V that the Guarantee terminated no later than March 24, 2022 when Servicios Funerarios filed the Mexican civil action.

Advent also seeks declaratory relief regarding the Massachusetts action and the Mexican criminal action.[96] But given that the filing of the Mexican civil action

---

[95] *See Chi. Bridge & Iron Co. v. Westinghouse Elec. Co.*, 166 A.3d 912, 927 (Del. 2017) ("The basic business relationship between parties must be understood to give sensible life to any contract.").

[96] *See, e.g.*, Compl. ¶ 168 ("The Claims barred by the Guarantee include the claims Servicios Funerarios has made against AIC, Advent Mexico, and the Targeted Employees in the Mexican Civil Complaint, Mexican Criminal Complaint, and the Massachusetts Complaint.").

caused the Guarantee to terminate, declaratory relief regarding the other suits would be meaningless.[97] Advent is not seeking an anti-suit injunction of the Massachusetts action and, as discussed below, I decline to enjoin the Mexican civil action.[98] "Delaware courts will . . . not issue declaratory relief when it can have no practical effect on the injury complained of."[99] Nor can a declaratory judgment be issued "merely to satisfy a party's desire for an advisory opinion or an adjudication of hypothetical questions."[100]

## B. Breadth of the Anti-Suit Injunction

The Injunction Order barred Servicios Funerarios from pressing claims against Advent International in the Mexican civil action.[101] Now, Advent seeks an

---

[97] A four-part test to determine whether an actual live case or controversy meriting declaratory relief exists: (1) the controversy must involve the rights of the party seeking declaratory relief; (2) the claim of right must be asserted against someone with an interest in contesting the claim; (3) the parties must be adverse; and (4) the issue in controversy must be ripe for judicial determination. *See Rollins Intern., Inc. v. International Hydronics Corp.*, 303 A.2d 660, 662-63 (Del. 1973).

[98] *See infra* Part II.B.1. Advent also neglected to meaningfully address the Massachusetts action during oral argument, mentioning it only once as comprising a breach of the Guarantee. *See* July Hr'g Tr. 33. It instead focused on the Mexican civil action as to Advent International (which I resolved in the June Opinion) and Advent Mexico, as well as the Mexican criminal action as brought against Advent International, Advent Mexico, and certain employees.

[99] *In re COVID-Related Restrictions on Religious Services*, 302 A.3d 464, 493 (Del. Super. 2023) (citing *Intermec IP Corp. v. TransCore, LP*, 2021 WL 4841131, at *2 (Del. Super. Oct. 18, 2021)).

[100] *Havens v. Attar*, 1997 WL 55957, at *9 (Del. Ch. Jan. 30, 1997).

[101] June Op. *13 ("Servicios Funerarios is permanently enjoined from litigating the Mexican civil action against Advent International.").

anti-suit injunction against the Mexican criminal action. It also asks that I extend the Injunction Order to include claims against Advent Mexico in the Mexican civil action. I deny both requests.

### 1. Application to the Mexican Criminal Action

In July 2022, Servicios Funerarios initiated a Mexican criminal action called a *querella* in which it accused Advent International, certain Advent affiliates (including Advent Mexico), and several individuals of committing fraud.[102] The individuals named were three current and former Advent employees, a former audit partner of Ernst & Young who performed due diligence on the Gayosso transaction, and former officers of Gayosso. Arrest warrants were issued for everyone except the Gayosso officers, who Servicios Funerarios subsequently pardoned.[103] Servicios Funerarios sought asset freezes denied in the Mexican civil action.

Now, Advent asks that I enjoin Servicios Funerarios from pressing the Mexican criminal action against itself, its current and former employees, and its affiliates—including Advent Mexico. Whether a Delaware court can enjoin a foreign criminal proceeding appears to be an issue of first impression. As discussed below, I decline to do so here.

---

[102] Compl. ¶¶ 111-12; Compl. Ex. D; Mijangos Decl. ¶ 14; *see also* Pls.' Opening Suppl. Submission in Supp. of an Order Permanently Enjoining the Mexican Criminal Action (Dkt. 69) ("Pls. Opening Suppl. Submission") 7.

[103] Compl. ¶ 111.

Servicios Funerarios's effort to flout bargained-for contractual protections by launching criminal proceedings over a merger gone bad is alarming. But the proceedings are now in the hands of the Mexican criminal justice system. The relief Advent seeks from this court would require Servicios Funerarios to affirmatively pardon the defendants, displacing the power of Mexican state prosecutors and courts. On balance, an injunction of this magnitude would test equity's limits and contravene principles of international comity.

My analysis proceeds in three parts. First, I begin by summarizing the *querella* system in Mexico. Second, I survey case law from other jurisdictions addressing orders to stop or limit foreign criminal proceedings. Third, I consider the plaintiff's request under Delaware law.

### a. Relevant Mexican Criminal Procedure

A *querella* is one method of initiating criminal proceedings under Mexican law.[104] In contrast to a state-initiated action, it is commenced by a private actor.[105] A *querella* is the only method of prosecuting criminal fraud in Mexico.[106]

---

[104] *See Causbie Gullers v. Bejarano*, 293 F. App'x 488, 490 (9th Cir. 2008) (citing Rodolfo Monarque Ureña, *Derecho Procesal Penal Esquematico (A Schematic of the Right to Criminal Process)* 21-27 (2002)); James F. Smith, et al., *Why Mexico? Why Mexican Law? Why Now?*, 24 Penn St. Int'l L.R. 373, 406 (2005); *see also* Compl. ¶ 103.

[105] Código Nacional de Procedimientos Penales Art. 225; *see also* Kuri Decl. ¶ 15; Mijangos Decl. ¶ 8 ("The *querella* consists of the act by which a putative victim or offended party informs the Prosecutor's Office of the commission of a crime and his intention for it to be prosecuted.").

[106] *See* Kuri Decl. ¶ 15 (discussing that a *querella* is "require[d] to initiate the

Although a *querella* is initiated by the offended party, the next steps are led by state actors. The public prosecutor directs the investigation into the accusations.[107] The prosecutor then decides whether the case will be taken before a judge.[108] If the prosecutor moves forward, the presiding judge will only issue an arrest warrant if she determines that the prosecutor has presented sufficient evidence to establish probable cause that the act was committed with the accused's participation.[109]

At any point, the victim may choose to pardon the accused.[110] Doing so is final—it ends the *querella*, absolves the accused party, and extinguishes the state's

---

investigation . . . because the Public Prosecutor's Office could not open an investigation file without the notice of the victim"); *id.* ¶ 16 (enumerating the crimes for which *querella* is required, including fraud); Decl. by Javier Mijangos y Gonzáles (Dkt. 69 Ex. 2) ("Mijangos Decl.") (explaining that fraud requires a *querella*); *see also* Compl. ¶ 103.

[107] Kuri Decl. ¶ 20. For example, it is within the power of the public prosecutor to receive and order acts of investigation, request precautionary measures, dictate protective measures, request investigations from the police, and conduct interviews with witnesses. *Id.*

[108] *Id.* ¶ 16.

[109] *Id.* ¶¶ 17-18.

[110] *Id.* ¶ 25.

power to prosecute the matter.[111]  In Mexico City, a pardon is the only way to terminate the *querella*.[112]  The pardon cannot be revoked once made.[113]

### b.  Relevant Case Law from Other Jurisdictions

Delaware courts have lacked prior occasion to consider whether they may enjoin a foreign criminal proceeding to enforce a forum selection clause in a commercial contract.  The parties thus look instead to decisions from various federal courts.

Advent cites precedent supporting the notion that the enforcement of forum selection (or arbitration) provisions can trump international comity concerns.[114]  It relies principally on *Rintin Corp., S.A. v. Domar, Ltd.*, where the United States District Court for the Southern District of Florida confirmed an arbitral award that required a party to "terminate its foreign civil and criminal lawsuits" in multiple international jurisdictions.[115]  In affirming the award, the United States Court of

---

[111] *Id.* ¶ 21 ("By means of a pardon, the victim of crimes prosecuted through a criminal complaint waives the protection of his, her, or its rights affected by the crime, preventing the Public Prosecutor's Office from going to the Control Judge to initiate the criminal process, or the Control Judge from continuing with the process in the event that the pardon is granted once the arrest warrant has been issued.").

[112] Mijangos Decl. ¶ 10.

[113] Kuri Decl. ¶¶ 24, 26-27; Mijangos Decl. ¶ 11.

[114] Plaintiffs' Suppl. Reply Submission in Further Supp. of an Order Permanently Enjoining SF from Prosecuting the Mexican Criminal Action (Dkt. 94) ("Pls.' Suppl. Reply") ¶¶ 10, 17

[115] *Rintin Corp., S.A. v. Domar, Ltd.*, 374 F. Supp. 2d 1165, 1168 (S.D. Fla. 2005), *aff'd* 476 F.3d 1254 (11th Cir. 2007).

Appeals for the Eleventh Circuit rejected the argument that the order "violate[d] the public policy of Florida . . . favoring international comity," countering that allowing the other suits to "circumvent the arbitration" would "set the entire arbitration at naught" and reduce it to "a sideshow."[116]  But the *Rintin* courts did not enjoin the prosecution of a foreign criminal matter, as Advent would have me do.  They applied the Florida International Arbitration Act in an "extremely limited" review of an arbitration award.[117]

Advent relies on *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren* for a similar point.[118]  There, the district court ordered an auditor to produce certain auditing records in ruling on a motion to compel.  The auditor was a defendant in a securities fraud action and the target of a related criminal investigation in Belgium.[119]  The auditor obtained a writ from a Belgian court regarding the records after it was compelled to produce discovery in the fraud action. The United States District Court for the District of Massachusetts then entered an anti-suit injunction preventing the auditor from pursuing, and ordered it to withdraw, its writ in Belgium.[120]  The United States Court of Appeals for the First Circuit

---

[116] *Id.* at 1261.

[117] *Id.* at 1169 (citation omitted).

[118] 361 F.3d 11, 20 (1st Cir. 2004); *see* Pls.' Suppl. Reply ¶ 17.

[119] *Quaak*, 361 F.3d at 15.

[120] *Id.* (quoting injunction order).

affirmed the district court, remarking that "the character of the foreign action, the public policy favoring the safeguarding of investors from securities fraud, the need to protect the court's own processes, and the balance of the equities" trumped international comity concerns.[121]  Unlike the relief Advent seeks, however, the injunction was of the auditor's writ—not the Belgian criminal proceeding.[122]

Advent also cites *Collins as Next Friend of J.Y.C.C. v. Doe Run Resources Corp.*, which is even further afield from this matter.[123]  In *Collins*, the United States District Court for the Eastern District of Missouri entered a protective order prohibiting the defendants' Peruvian counsel from having ex parte communications with represented parties during witness interviews in a parallel Peruvian criminal investigation.[124]  The district court's order was based on concerns "about whether the defendants were circumventing [its] discovery rulings—a matter relating to the conduct of litigation before the court."[125]  The court did not mention comity in its decision.  The Peruvian investigation continued, and the defendants remained able

---

[121] *Id.* at 20.

[122] *Id.* at 21-22.

[123] 65 F.4th 370 (8th Cir. 2023); *see* Pls.' Suppl. Reply ¶ 17.

[124] *Collins*, 65 F.4th at 378.

[125] *Id.*

to participate in it.[126]  The United States Court of Appeals for the Eighth Circuit dismissed the appeal for lack of jurisdiction.[127]

Servicios Funerarios, for its part, relies on authority addressing limits on United States courts' ability to enjoin, limit, or affect a foreign government's prosecution of its own criminal laws.  It cites several cases in which courts declined to enjoin a party's participation in a foreign criminal proceeding due to international comity concerns.[128]  It chiefly relies on *Universal Entertainment Corp. v. Aruze Gaming America, Inc.* ("*UEC*"), in which the United States District Court for the District of Nevada denied the defendants' request to enjoin the plaintiffs from voluntarily cooperating with authorities in a Macanese criminal investigation.[129]

The facts of *UEC* are like those here.  The defendants in *UEC* asserted that the investigation was launched in Macau by a private entity and pursued by a public

---

[126] *Id.* at 375.

[127] *Id.* at 378.

[128] Def.'s Opp'n to Pls.' Opening Suppl. Submission (Dkt. 81) ("Def.'s Suppl. Opp'n") ¶ 25 (citing *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 79 (3d Cir. 1994) ("We are unaware of any court in the United States—or elsewhere—that has ever attempted to inject itself . . . into the internal law enforcement activities of a foreign sovereign.") and *Allscripts Healthcare, LLC v. Andor Health, LLC*, 2021 WL 4061544, at *1, 10 (D. Del. 2021) ("We deny the plaintiffs' motion for immediate extraordinary relief . . . to preliminarily enjoin the Indian entity defendant from further cooperating in an ongoing criminal investigation against nonparties in India . . . We trust the Indian investigators and courts will determine the truth of statements Mahathi India made to police authorities regarding non-parties in India.")).

[129] 2020 WL 1258428, at *5 (D. Nev. Mar. 16, 2020).

prosecutor—much like the *querella* system in Mexico.[130]  The plaintiffs there, like

Servicios Funerarios, had a role in initiating the criminal investigation.[131]

Despite that, the *UEC* court declined to enter an anti-suit injunction of the

Macanese investigation.  It held that the role of the Macanese authorities in directing

the investigation and deciding which charges to bring distinguished it from a civil

proceeding.[132]  Since "the determination of how a country's criminal laws should be

investigated and enforced represents one of the most important characteristics of

sovereign authority, th[e] Court w[ould] not intervene in an essentially criminal

proceeding of another country."[133]  It observed that to do so "would have an

intolerable impact on the criminal proceeding and thus international comity."[134]

---

[130] *Id.* ("[I]n Macau, a private entity may file either a civil or criminal complaint for patent infringement and 'may request to be appointed as an assistant to the criminal proceedings and, in that capacity . . . may provide its collaboration in the investigation, as well as request that investigative measures and further means of evidence be produced and/or collected.'  The Public Prosecutor, 'directly or with the assistance of the police authority . . . must investigate the complaint.'  It is ultimately the Public Prosecutor's decision whether to bring an indictment after investigation, but if 'sufficient evidence exists' to suggest that a crime may have been committed, the Prosecutor 'must' pursue charges." (quoting affidavit from defendant's counsel)).

[131] *Id.*

[132] *Id.*

[133] *Id.*

[134] *Id.*

c.     Delaware Law

Armed with an understanding of the Mexican *querella* system and federal precedent, I turn to consider whether the injunction Advent seeks should be entered under Delaware law.  To obtain a permanent injunction of the Mexican criminal action, Advent must show (1) "actual success on the merits," (2) that "irreparable harm will be suffered" absent injunctive relief, and (3) that any harm resulting from denial of the injunction "outweighs the harm that would befall" the non-movant if an injunction were entered.[135]  The third factor is wanting.

Advent International and its affiliates face harm absent an injunction. Assuming they could prove actual success on the merits for the reasons considered above and in the June Opinion,[136] the bargained-for protections of the Guarantee are frustrated by the Mexican criminal action.  An injunction would give the parties the value of their bargained-for rights.  I enjoined Servicios Funerarios from pursuing the Mexican civil action against Advent International for this reason.[137]  Although I

---

[135] *Christiana Town Ctr., LLC v. New Castle Ctr.*, 2003 WL 21314499, at *2 (Del. Ch. June 6, 2003) (citation omitted), *aff'd sub nom. Christiana Town Ctr. LLC v. New Castle Cnty.*, 841 A.2d 307 (Del. 2004) (TABLE).

[136] *See supra* Parts II.A.2; June Op. *12 ("Advent is entitled to summary judgment in its favor insofar as Servicios Funerarios' filing of the Mexican civil action breached Section 10 of the Guarantee.").

[137] June Op. *12.

37

sympathize with the defendants facing prosecution, I cannot prejudge the merits of a foreign nation's enforcement of its criminal laws.

At the same time, Servicios Funerarios risks harm if I were to grant the injunction. In substantial contrast to the injunction of the Mexican civil action, an injunction of the Mexican criminal action would effectively extinguish Servicios Funerarios's appeal rights.[138]

More critically, dropping the *querella* would require Servicios Funerarios to affirmatively pardon Advent International and its affiliates.[139] That is, Servicios Funerarios would not only be compelled to cease the proceeding but also to exonerate these parties. Bringing to bear more than 30 years of Mexican criminal law experience, Servicios Funerarios's expert cites precedent from the Supreme Court of Justice of the Nation (Mexico's Supreme Court) in explaining that a pardon "constitutes a manifestation of will between the parties that intervene in it . . . an act independent of what must be carried out and expressed before said authority, who,

---

[138] Kuri Decl. ¶¶ 21-27. In *Carlyle Investment Management L.L.C. v. National Industries Group*, the court affirmed an order that "permanently enjoined" one of the parties "from filing or prosecuting any action subject to the forum selection clause . . . in any forum other than the courts of the State of Delaware," preventing the party from appealing in other courts. 2012 WL 4847089, at *4 (Del. Ch. Oct. 11, 2012). There, however, the order was in the form of a default judgment since the party subject to the injunction consistently and willfully failed to appear in Delaware. *Id.* No such circumstances are present here.

[139] Kuri Decl. ¶ 26.

taking as a basis what was manifested before it, will resolve what is legally appropriate . . . ."[140]

Perhaps most critically, I cannot ignore that principles of international comity favor denial of the injunction.[141] The unusual and extreme relief Advent seeks would interfere with the Mexican government's prosecution of its own laws. As the matter stands, a Mexican prosecutor and judge found probable cause to issue arrest warrants.[142] "Whether those allegations [we]re credible enough . . . is a decision to be made by the foreign government."[143]

On balance, I decline to enter the injunction sought.[144] To demand that Servicios Funerarios grant pardons and end criminal proceedings under the direction of foreign state actors would exceed the reach of any anti-suit injunction issued by a Delaware court. The Mexican courts and prosecutor are in control of the matter. As in *UEC*, I hesitate "to intrude upon this sovereign discretion."[145]

---

[140] *Id.* (citing Detail – Thesis – 196940 (scjn.gob.mx)). Advent's expert, Javier Mijangos y Gonzalez, did not speak in his declarations to whether a pardon constituted a judgment on the merits. *See* Mijangos Decl; Decl. by Javier Mijangos y González (Dkt. 94) ("Mijangos Reply Decl.").

[141] *See supra* note 128 and accompanying text.

[142] Def.'s Suppl. Opp'n Ex. E.

[143] *UEC*, 2020 WL 1258428, at *5.

[144] *See Turek v. Tull*, 139 A.2d 368, 374-75 (Del. Ch. 1958) (explaining the discretionary nature of permanent injunctive relief).

[145] *UEC*, 2020 WL 1258428, at *5.

2.  Extension of the Anti-Suit Injunction to Advent Mexico

Finally, Advent seeks to enjoin Servicios Funerarios from prosecuting the Mexican civil action against Advent Mexico. Although the June Opinion and Injunction Order made no mention of Advent Mexico, Advent insisted that the relief extended to this entity.[146] After Servicios Funerarios filed a motion for clarification, Advent filed the operative Complaint to affirmatively request injunctive relief on behalf of Advent Mexico, which was added as a plaintiff.[147]

Now, Advent correctly argues that the reasoning in the June Opinion applies to Advent Mexico and supports a related injunction. Again, Advent International and Advent Mexico are "Non-Parties" that Servicios Funerarios covenanted in the Guarantee not to sue.[148] Thus, Section 10 of the Guarantee's bar against suing Advent International in a non-Delaware forum logically extends to Advent Mexico.[149]

Still, I decline to enjoin Servicios Funerarios from pressing the Mexican civil action against Advent International for two reasons. First, although extending the

---

[146] Pls.' Resp. to Def.'s Mot. For Rearg. (Dkt. 59) ¶ 19 ("The plain language of the Opinion and Order makes clear that the Guarantee prohibits [Servicios Funerarios] from litigating the Mexican Civil Action against Advent Mexico.").

[147] *See* Tr. of June 27, 2024 Telephonic Status Conf. and Sched. Conf. ("June Conf. Tr.") 12; Compl. Ex. 1 (redline).

[148] June Op. *9; *see supra* note 77.

[149] June Op. *12.

injunction to cover Advent Mexico would be consistent with the reasoning of the June Opinion, Advent Mexico was not a party to the action when I issued the Injunction Order.[150] I reject Advent's invitation to extend relief to non-party entities "acting in concert" with Advent International.[151] Second, laches bar the extension of injunctive relief to Advent Mexico.[152]

A laches-based defense requires a showing of: (1) knowledge by the claimant; (2) unreasonable delay in bringing the claim; and (3) resulting prejudice to the defendant.[153] All three elements are present here.

---

[150] Moreover, Advent's initial briefing expressly disclaimed that it was asking for relief on behalf of Advent Mexico. In its reply in further support of its summary judgment motion, Advent acknowledged that Advent Mexico was not a party to the action but stated that the court could ignore that in deciding whether to enjoin the Mexican civil action since it "ha[d] never asked th[e] Court to enjoin [Servicios Funerarios] from pursuing the Mexican Civil Action in its entirety." Pls.' Omnibus Reply Br. 13; *see also* Tr. of May 16, 2024 Oral Arg. Regarding Pls.' Mot. for Summ. J. and Def.'s Mot. to Dismiss or Stay (Dkt. 50) 4-5 (seeking a "very limited" anti-suit injunction "solely as to AIC in the Mexico civil case"). Advent fails to explain why it has since shifted position on this point.

[151] June Conf. Tr. 12. Advent relies on *Goldstein v. Denner* for this contention. Pls.' Resp. to Def.'s Mot. for Rearg. ¶ 24 (citing 2022 WL 1797224, at *15 (Del. Ch. June 2, 2022)). But *Goldstein* speaks only to the court's ability to grant relief that the parties did not seek in their pleadings—not its ability to grant relief with respect to non-parties. *Goldstein*, 2022 WL 1797224, at *15 (citation omitted).

[152] Servicios Funerarios's motion for clarification contends that to extend relief to Advent Mexico would "ignore the fact that Advent Mexico has been actively litigating in the Mexico civil action for approximately two years." Def.'s Mot. for Clarification ¶ 24.

[153] *Whittington v. Dragon Grp., L.L.C.*, 991 A.2d 1, at 8 (Del. 2009).

41

On the first laches element, Advent Mexico knew about the Mexican civil action by the time that it was served on April 19, 2022.[154] It was involved in the Gayosso transaction from its earliest stages. Pablo Peña, Servicios Funerarios's principal, initially approached Advent Mexico about purchasing Gayosso and it was Advent Mexico that entered into a non-binding term sheet with Peña.[155] Advent Mexico was also actively involved in the negotiation of the SPA.[156] As such, Advent Mexico was surely aware of the terms of the Guarantee, including that it was a "Non-Party" protected from litigation by Servicios Funerarios over the transaction.

Second, Advent Mexico's delay in seeking injunctive relief was unreasonable. Advent Mexico answered the complaint in the Mexican civil action more than two years ago, shortly after it was served.[157] Yet it waited until recently to seek an anti-suit injunction from this court. This is in significant contrast to Advent International, which sought an expedited anti-suit injunction immediately upon being served with

---

[154] Decl. of Daniel A. Díaz Alvarez, Servicios Funerarios' Mexican Civil Counsel, in Supp. of its Reply in Further Supp. of its Mot. For Clarification (Dkt. 67) ("Díaz Decl.") ⁋ 33.

[155] June Op. *2.

[156] *Id.*

[157] Def.'s Mot. for Clarification ¶ 24. Advent asserts that Advent Mexico has not been actively litigating the Mexican civil action. *See* Dkt. 42. According to Advent, since "Mexican civil actions may proceed only after all defendants are served; thus, *no* party has been 'actively litigating' during the past two years." Pls.' Resp. to Def.'s Mot. for Rearg. ¶ 23 n.3. That may be true. But Advent Mexico answered the complaint in the Mexican civil action and waited for years to request an anti-suit injunction from this court.

the Mexican civil action complaint.[158]  While Advent International sought injunctive relief, Advent Mexico did not.[159]  Advent Mexico offers no reason for its delay.[160]

Third, Servicios Funerarios was prejudiced by Advent Mexico's failure to timely pursue injunctive relief.  For two years, it has litigated claims against Advent Mexico in the Mexican civil action.[161]  Given Advent Mexico's answer to the complaint in that suit, Servicios Funerarios had reason to believe that its claims against Advent Mexico would not proceed apace.  Servicios Funerarios also devoted resources to litigating Advent's claim in this court for an anti-suit injunction protecting Advent International.  It is now being caused to revisit these arguments as to Advent Mexico—though both parties initially agreed that Advent Mexico was not a party to this suit.[162]

---

[158] *See* June Op. *6 n.66 ("Laches also does not bar Advent [International]'s request for an injunction.  *Advent sought this relief when Advent International was served with process in Mexico*, which occurred long after the suit was filed.  Before then, Advent International had no obligation to respond to the suit." (emphasis added)); Dkt. 42 (letter from Advent International requesting expedited relief immediately following service of process); *see also* June Op. *4 (granting expedited relief).

[159] *See supra* notes 146-47 and accompanying text; *see also supra* note 150.

[160] *CNL-AB LLC v. Eastern Prop. Fund I SPE*, 2011 WL 353529, at *5 (Del. Ch. Jan. 28, 2011) ("[T]he temporal aspect of the delay is less critical than the reasons for it.") (citing *Whittington*, 991 A.2d at 7-8).

[161] *See Tracker Marine, L.L.C. v. Pena*, 2017 WL 3528633, at *3 (Del. Ch. July 17, 2017) (discussing prejudice suffered by a defendant where a plaintiff's delay forced him to "pay for additional counsel in order to litigate parallel proceedings" in two jurisdictions).

[162] *See supra* note 150.

Accordingly, Servicios Funerarios is not enjoined from pursuing the Mexican civil action against Advent Mexico. Advent Mexico has "waited too long to invoke equity, and [its] request is [now] barred by laches."[163]

## III. CONCLUSION

For the reasons outlined above, summary judgment is granted in Advent's favor in part. Servicios Funerarios breached Section 9 the Guarantee by filing the Mexican civil action against Advent International and Advent Mexico, which caused the Guarantee to terminate.

I decline to issue an anti-suit injunction of the Mexican criminal action. I also decline to enjoin Servicios Funerarios from prosecuting the Mexican civil action against Advent Mexico.

If there are remaining matters to be resolved, the parties are to inform the court by joint letter within 14 days. Otherwise, the parties are to submit a proposed order to implement this decision or competing proposed orders with a joint letter outlining the differences and a redline comparing the two proposed orders.

---

[163] *FP UC Holdings, LLC v. Hamilton*, 2020 WL 1492783, at *14-15 (Del. Ch. Mar. 27, 2020); *see also Brookstone P'rs Acq. XVI, LLC v. Tanus*, 2012 WL 3711410, at *4 (Del. Ch. Aug. 22,2012) (denying a motion to expedite after party sought to preempt foreign proceeding after waiting five months).

44